WARAX v. CINCINNATI, N. O. & T. P. RY. CO. et al.

(Circuit Court, D. Kentucky.)

1. REMOVAL OF CAUSES—DIVERSE CITIZENSHIP—FRAUDULENT JOINDER OF DEFENDANT.

In order that the joinder of a defendant should be regarded as fraudulently made for the purpose of avoiding the jurisdiction of the federal court, it must appear, by allegation and proof, not only that it was made for

that purpose, but also that the averments upon which the right to join such defendant is claimed are so unfounded in fact and incapable of proof as to justify the inference that they were not made in good faith with the hope and intention of proving them, or else that they do not state a joint cause of action. The mere fact that an action, since discontinued, was once brought for the same tort against one of the defendants, without joining the other, is not sufficient.

2. NEGLIGENCE—MISFEASANCE AND NONFEASANCE.

When the engineer of a railroad train starts such train, without giving warning, while he knows or ought to know that a switchman is between the cars of the train, engaged in uncoupling them, in consequence of which the switchman is injured, the engineer's act is misfeasance, not nonfeasance.

3. SAME—MASTER AND SERVANT—JOINT AND SEVERAL LIABILITY.

When a master is made liable for the negligent or wrongful act of his servant solely upon the ground of the relationship between them, under the doctrine of respondeat superior, and not by reason of any personal share in the negligent or wrongful act, by his presence or express direction, he is liable severally only, and not jointly with the servant.

This is a motion by the plaintiff in the above-entitled cause to remand the case to the state court, where it was begun. Plaintiff's cause of action against the defendant railway company and its codefendant is stated in the petition as follows:

"On March 2, 1892, on said railway, and in the railway yard thereof at Somerset, plaintiff was the servant of the corporate defendant, employed by it as a switchman, and as a member of the crew of a yard locomotive engine and tender then and there belonging to the corporate defendant, and used by it in operating said railway; and defendant Charles Snyder was then and there also the servant of the corporate defendant, employed by it as a member of said crew, and as the engineer of said locomotive engine, and he then and there, as such engineer and servant of the corporate defendant, ran and operated the same. At the time and place aforesaid, defendants had attached to said locomotive engine and tender a train of five freight cars, and defendants then and there ordered and directed plaintiff to uncouple the three rear cars of said train; and thereupon plaintiff engaged in the work of executing said order and direction of defendants, and while plaintiff was so engaged in the work of executing said order and direction of defendants, the defendants, with full knowledge that plaintiff was engaged in said work, and without notice or warning to plaintiff, with gross and wanton negligence, suddenly and violently started the cars of said train forward with and by means of said locomotive engine, and so moved, ran, and operated said locomotive engine, tender, and cars of said train that then and there, by said gross and wanton negligence of defendants, plaintiff was thrown under the cars of said train; and then and there, by reason of said gross and wanton negligence of defendants, plaintiff's left leg was run upon and over by the cars of said train, and so injured that the same had, soon thereafter, to be amputated above the knee, and near the body, and he was otherwise severely and permanently injured in his person. By his said injuries plaintiff was made, and long continued, ill therefrom. He suffered, and long will continue to suffer, great mental pain and physical anguish. Thereby he was made a helpless cripple for life, and his capability to labor and earn money was greatly and permanently impaired, all to his damage in the sum of twenty-five thousand dollars. In the doing of said wrong defendant Snyder was the servant and agent of his codefendant, and said gross and wanton negligence was the joint gross and wanton negligence of both the defendants."

The railway company filed its petition for removal, setting out the various jurisdictional grounds, and, among others, the following:

"That there is, in said suit, a controversy wholly between citizens of different states, which can be fully determined as between them; that is to

say, between your petitioner, the Cincinnati, New Orleans & Texas Pacific Railway Company, defendant in said suit (who avers that it was at the commencement of this suit, and still is, a corporation organized under the laws of the state of Ohio, and of no other state, and that it was then, and still is, a citizen and resident of the state of Ohio, and of no other state, and that it was not then, and is not now, either a resident or citizen of the state of Kentucky), and plaintiff, Eugene R. Warax, who sues by his next friend, John L. Rich. Your petitioner says that both the said Warax and John L. Rich were at the commencement of this suit, and still are, residents and citizens of the state of Kentucky. Your petitioner further shows that heretofore, to wit, on the 13th day of December, 1892, a suit was instituted upon the same claim as in plaintiff's petition herein set out against this defendant, in the circuit court of Pulaski county, Kentucky, to recover of this defendant the sum of ten thousand dollars damages for the same injuries alleged to have been sustained by the said plaintiff, Eugene R. Warax, as in his petition herein set out. Your petitioner further shows that it filed the proper proceedings in said suit so pending in the Pulaski circuit court, Kentucky, to remove said suit to the circuit court of the United States for the district of Kentucky, because said controversy was a controversy existing between citizens of different states, and that such proceedings were had that the said suit was removed from the said Pulaski circuit court to the circuit court of the United States for the district of Kentucky, and that the jurisdiction of said suit wholly vested in said circuit court of the United States for the district of Kentucky, and the said suit pended, undisposed of, in the said circuit court of the United States for the district of Kentucky, until the 12th day of December, 1894, when the plaintiff dismissed said suit from the said circuit court of the United States for the district of Kentucky, and immediately after said dismissal brought this proceeding in this court to recover for the same injuries, from this defendant, the said sum of twenty-five thousand dollars. Your petitioner further shows that, in this suit, said plaintiff has fraudulently and improperly joined as a codefendant with your petitioner herein one Charles Snyder, who is a citizen of the state of Kentucky, and who is a resident of the county of Pulaski, in the state of Kentucky; and your petitioner says that the said Charles Snyder has been fraudulently and improperly joined as party defendant with your petitioner in this cause, from the fact that he is a resident and citizen of the state of Kentucky, and for the sole purpose of defeating the jurisdiction of the United States court. And your petitioner says that the injury to the plaintiff, Eugene R. Warax, happened on the 3d day of March, 1892, in the town of Somerset, county of Pulaski, and state of Kentucky, and said injury did not happen or occur in the county of Kenton, in the state of Kentucky. And your petitioner says that the plaintiff, Eugene R. Warax, resides in Pulaski county, Kentucky, through which county your petitioner's road passes, and that the chief office and place of business of your petitioner in the state of Kentucky is in the city of Lexington and county of Fayette."

Plaintiff filed an answer to the petition for removal in this court, denying that there was, in this suit, a controversy wholly between citizens of different states, which could be fully determined between them, and denying that Snyder was joined as a party defendant for the sole purpose of defeating the jurisdiction of the United States court. It appeared by evidence and admission that a previous suit had been brought and dismissed as averred in the petition for removal.

Wm. Goebel, for plaintiff.

Edward Colston and C. B. Simrall, for defendant.

Before TAFT and LURTON, Circuit Judges.

TAFT, Circuit Judge (after stating the facts as above). Plaintiff's petition seeks to hold the railroad company and Snyder, its

engineer, as joint tort feasors. If, on the statements in the petition, he is able to do so, then the cause is not removable (Railroad Co. v. Wangelin, 132 U. S. 599, 10 Sup. Ct. 203; Pirie v. Tvedt, 115 U. S. 41, 5 Sup. Ct. 1034, 1161; Sloane v. Anderson, 117 U. S. 275, 6 Sup. Ct. 730; Plymouth Consol. Gold Min. Co. v. Amador & S. Canal Co., 118 U. S. 264, 6 Sup. Ct. 1034; Hedge Co. v. Fuller, 122 U. S. 535, 7 Sup. Ct. 1265), unless it be made to appear, to the satisfaction of the court, that one of the defendants was fraudulently joined for the purpose of defeating the jurisdiction of the federal court. In order that such joinder should be regarded as fraudulent, it must appear, by allegation and proof, not only that it was made for the purpose of avoiding the jurisdiction of the federal court, but also that the averments of the petition upon which the right to join the defendants is claimed are so unfounded and incapable of proof as to justify the inference that they were not made in good faith with the hope and intention of proving them, or else that they do not state a joint cause of action. No proof is offered in this case, except the fact that suit was once brought on the same cause of action against the railroad company without joining Snyder, the engineer. This may be regarded as a circumstance tending to show that the purpose in joining Snyder was to avoid the jurisdiction of the federal court, but it does not show, or have any tendency to show, that the averments of the petition with respect to Snyder, upon which the right to join Snyder is asserted, were unfounded in fact. One who has a real cause of action for joint tort against two persons cannot be deprived of the right to bring his action against both, and to retain both in the case, and to have the case heard with both as defendants, merely because he joined them for the purpose of avoiding the jurisdiction of the federal court. If the right exists, the motive for its exercise cannot defeat it. It should be said, however, that where, as in this case, there is manifested a desire to prevent a removal by the unusual course of joining a locomotive engineer with a railroad company, the court will not be astute, by any strained construction, to make the averments of the petition support the plaintiff's right to join the defendants.

This brings us to the second ground upon which the plaintiff claims a right of removal; that is, that no cause of action is stated against the engineer. It is contended that the failure of the engineer to give notice to the plaintiff of his intention to move the train while the plaintiff was between the cars was a mere act of nonfeasance, for which the plaintiff must look to the master, and not to the servant. This contention cannot be supported. Conceding, without deciding, the rule to be that, for mere nonfeasance, the servant of the master cannot be made responsible to third persons injured thereby, we are clearly of opinion that the act of the engineer in backing the engine voluntarily without giving notice was misfeasance, instead of nonfeasance; that the knowledge he had, or ought to have had, of the presence of the plaintiff between the cars, made his movement of the train without giving notice a direct trespass or wrong committed by him against plaintiff, without regard to the relation existing between each of

them and the railway company. No case has been cited to us in which such an act of a servant in the business of his master has been held to be nonfeasance. The last case, and one most fully considered, is Osborne v. Morgan, 130 Mass. 102, where the supreme judicial court of Massachusetts, speaking by Chief Justice Gray, held that a servant who attached a block and tackle to the ceiling in the course of his employment, and did not sufficiently secure it to prevent its falling, was liable in a direct action of tort to a fellow servant who was injured thereby. This case is a stronger case than that, for here the act of the servant directly injured his fellow servant.

We come, therefore, to the third ground upon which the defendant railway company rests its right to remove, which is that no joint tort is stated in the averments of the petition against both defendants. Taking the averments of the petition together as a whole, especially the last averment, in which it is stated that, in moving the engine, the engineer acted as the agent and servant of the defendant, and that the injury was caused by the defendant by the movement of the engine, we think that the petition must be construed to mean that the acts of negligence which were complained of in the movement of the engine were acts of the defendant, because committed by and through its agent and servant, the engineer, and that the conclusion that the acts were the result of the joint negligence of the defendant railroad company and the engineer is a mere conclusion of law, based on the proposition that, where the engineer, through his negligence, does an injury in the scope of his employment, he and his principal are jointly liable in one action therefor. If plaintiff intended to charge that the defendant was present by any corporate or superintending officer, so as to constitute what would be a personal interference in the acts complained of by the master, he should have made his petition specific upon this point. In his failure to do so, he must rest alone on the proposition of law above stated to justify his joinder of the company and the engineer. The question whether the master and the servant can be joined, as the perpetrators of a joint tort, for the injury inflicted by the negligence of the servant, without the presence of the master, and without his express direction, is one upon which the authorities do not agree. The affirmative of the proposition is supported by the cases of Wright v. Wilcox, 19 Wend. 343; Suydam v. Moore, 8 Barb. 358; Montfort v. Hughes, 3 E. D. Smith, 591; Phelps v. Wait, 30 N. Y. 78; Wright v. Compton, 53 Ind. 337; Greenberg v. Lumber Co. (Wis.) 63 N. W. 93; Newman v. Fowler, 37 N. J. Law, 89. It is contended that the case of Martin v. Railroad Co., 95 Ky. 612, 26 S. W. 801, is also an authority in support of this contention. An examination of the case, however, will show that the question was not decided. The case was one where suit was brought against three defendants as joint tort feasors, and the court below held that, on the undisputed evidence, the defendants were none of them liable, and directed a verdict for the defendants. The plaintiff brought the case up on error, and the decision of the court was

that there was evidence tending to support a cause of action against one of the railroad companies and its engineer; but the court did not discuss the question whether they could be joined, and there is nothing in the opinion to indicate that it was considered.

The cases which support the view that the master cannot be joined as defendant in the action against his servant for negligence, where the master is not personally concerned in the negligence, either by his presence or express direction, are as follows: Parsons v. Winchell, 5 Cush. 592; Mulchey v. Religious Soc., 125 Mass. 487; Clark v. Fry, 8 Ohio St. 358, 377; Seelen v. Ryan, 2 Cin. R. 158; Campbell v. Sugar Co., 62 Me. 553; Beuttel v. Railway Co., 26 Fed. 50; Page v. Parker, 40 N. H. 47, 68; Bailey v. Bussing, 37 Conn. 349, 351. It is to be observed that, if this were a mere question of procedure, one that had nothing to with the real basis of liability, and did not grow out of the character of the wrong complained of, we ought, perhaps, to examine with some degree of care the procedure in the state courts of Kentucky. There is no statute, however, in Kentucky, which attempts to vary the procedure from that at common law. In fact, it will be found that in none of the Codes has any attempt ever been made with respect to the liability for torts as to their joint and several character. Bliss, Code Pl. §§ 82, 83. The rule which permitted a plaintiff injured by the joint act of defendants to join them in one action was rested originally on the theory that they were to be held as conspirators, and that each, having knowingly embarked on the unlawful venture, was liable for all that the other did, and that therefore they could be held as partners in wrong. Joint trespassers were held on the same principle, and finally, where two persons were guilty at the same time of mere acts of negligence, operating together to cause injury to a third person, it was held that they must be regarded as acting in concert, and that each must be held liable for the entire damage, as for a joint tort. The advantage which this gave the defendant in actual trials was very considerable. Under the old rule, which forbade parties to testify, it prevented one defendant from using the other as a witness. It enabled the plaintiff to take a joint judgment against both, and to enforce it against either. The election which the plaintiff had to sue one or more of the joint feasors grew out of the assumed concert of action which he charged against them all. Hence, the question is whether, when a master is held liable for the negligence of his servant in his absence, which negligence he did not direct, he can be said to have acted in concert with the servant to produce the injury in such a way as that he and the servant can be held liable in the joint action. Clearly not. His liability does not arise from any common purpose that he had with the servant, or from any actual unity of action between them, in point of time and effect, or otherwise. His liability arises simply and solely from the policy of the law, which makes him responsible for the acts of his servant, done in the discharge of his business. The rule by which he is held is usually referred to as the rule of re-

spondeat superior, which, says Mr. Pollock, in his work on Torts (4th Ed., p. 70), "is a dogmatic statement, not an explanation." The learned author continues:

"It is also said, 'Qui facit per alium facit per se.' But this is in terms applicable only to authorized acts, not to acts that, although done by the agent or servant 'in the course of the service.' are specifically unauthorized, or even forbidden. Again, it is said that a master ought to be careful in choosing fit servants; but, if this were the reason, a master could discharge himself by showing that the servant for whose wrong he is sued was chosen by him with due care, and was in fact generally well conducted and competent, which is certainly not the law. A better account was given by Chief Justice Shaw of Massachusetts. 'This rule,' he said, 'is obviously founded on the great principle of social duty, that every man, in the management of his own affairs, whether by himself or by his agents or servants, shall so conduct them as not to injure another, and, if he does not, and another thereby sustains damage, he shall answer for it.' This is, indeed, somewhat too widely expressed; for it does not, in terms, limit the responsibility to cases where at least negligence is proved. But no reader is likely to suppose that, as a general rule, either the servant or the master can be liable where there is no default at all. And the true principle is otherwise clearly enounced. I am answerable for the wrongs of my servant or agent, not because he is authorized by me or personally represents me, but because he is about my affairs, and I am bound to see that my affairs are conducted with due regard to the safety of others. Some time later the rule was put by Lord Cranworth in a not dissimilar form: The master 'is considered as bound to guaranty third persons against all hurt arising from the carelessness of himself or of those acting under his orders in the course of his business.'"

Mr. Pollock quotes from a French writer, M. Sainctelette, on the subject, saying:

"Responsibility of the agent for the principal is not a fiction invented by the positive law. It is an exigency of the social order."

It will thus be seen that the master is not held on any theory that he personally interferes to cause the injury. It is simply on the ground of public policy, which requires that he shall be held responsible for the acts of those whom he employs, done in and about his business, even though such acts are directly in conflict with the orders which he has given them on the subject. The liability of the servant, on the other hand, arises wholly because of his personal act in doing the wrong. It does not grow out of the relation of master and servant, and does not exist at all, unless it would also exist for the same act when committed, not as the servant, but as the principal. Liabilities created on two such wholly different grounds cannot and ought not to be joint. The question is most fully examined in the case of Parsons v. Winchell, 5 Cush. 592, in an opinion by Judge Metcalfe, wherein all the cases are examined. This was followed by the case of Mulchey v. Religious Soc., 125 Mass. 487, in which Chief Justice Gray used this language:

"If there was any negligence in the agents, Barber and Sleeper, for which they could be held liable, their principal, the society, would be responsible, not as if the negligence had been its own, but because the law made it answerable for the acts of its agents. Such negligence would be neither in fact nor in legal intendment the joint act of the principal and of the agents, and therefore both could not be jointly sued. It is not like the case of a willful injury done by an agent by the command or authority of his principal, in which both are, in law, principal trespassers, and therefore liable jointly."

The same rule is followed in Ohio in the case of Clark v. Fry, 8 Ohio St. 358, 377. Suit was there brought to recover damages against the owner of property which caused an excavation to be built in front of his house, which had been negligently and wrongfully allowed to remain in an unfenced condition by his servant. Said the court:

"But whether the liability to the defendant in error, if any existed, attached to Freeman alone, or to Clark for the negligence of his servant or agent, or to Clark and Freeman as joint tort feasors, depended upon a legal question arising upon the relation between Clark and Freeman in respect to the transaction alleged as the occasion of the injury. If the excavation had been ipso facto unlawful, as an unnecessary encroachment on the street, Clark and Freeman would have been liable, if any liability existed, jointly as wrongdoers. But if there was nothing in the work that Clark had required by the contract to be done which was in itself unlawful, or which, properly done, could be the occasion of an injury to any one, and Freeman, wholly free from the control of Clark as to the manner of doing the work, had by his own wrongful and negligent conduct been the cause of the injury, he alone would be liable. If, however, Freeman, acting under the control and direction of Clark, as his servant or agent, had negligently and wrongfully allowed the excavation to be in an unfenced or otherwise dangerous condition, whereby the injury was sustained, Clark would be liable, although not jointly, with Freeman. In this last instance supposed, either Clark or Freeman might be sued separately; but, inasmuch as Clark, although he could not excuse himself on the ground that the nuisance had been occasioned by the negligence of Freeman, would have a right of action against Freeman for the recovery of such damages as he might be compelled to pay by reason of his negligence, he (Clark) could not be joined in the same action with Freeman. This doctrine was expressly ruled in Parsons v. Winchell, 5 Cush. 592, and it appears to rest upon a reason which is entirely satisfactory."

In Campbell v. Sugar Co., 62 Me. 553, suit was brought against a corporation which owned a wharf, and against their agents who had control of the wharf, for an injury sustained, through a failure to repair the wharf, by a person lawfully upon it. In this case the court said:

"The corporation is answerable for its constructive negligence, or, perhaps (to speak more exactly), on the principle of respondeat superior, and must be held, as Lord Kenyon remarked (1 East, 108), 'to make a compensation for the damage consequential from the employing of an unskillful or negligent servant.' The other defendants, who were the general agents of the corporation, and had the care of this wharf, and who, through their senior partner, had agreed with the lessees to make all needful repairs, are certainly in no better position than their principal. It is the actual, personal negligence of the agents which constitutes the constructive negligence of the corporation. The corporation acts through and by them, and they act for the corporation; and when their acts or neglects result in injury to third parties, they are equally responsible with their principals. But it does not thence follow that they are jointly responsible. The question whether they may be so held is a somewhat nice one, but we think there are substantial reasons, assigned in Parsons v. Winchell, 5 Cush. 592, why the principal and agent should not be charged jointly in such a case. It is not, properly speaking, their joint act or neglect which causes the injury. The proper adjustment of the final responsibility as between themselves cannot well be affected if one who has distinct grounds of action against them—against the agents for their own negligence, and against the principal because the law makes them responsible for the negligence of their servants—is permitted to recover against both in one suit. The distinction between actions on the case arising from negligence and actions of trespass, where the wrong is inflicted at the command of the superior, in this respect, is well marked, and goes somewhat deeper than mere form."

In Page v. Parker, 40 N. H. 47–68, it was sought to hold the principal in a contract of sale liable in tort for the fraudulent misrepresentations of his agents in the sale of property, although he had no knowledge of and took no part in the misrepresentation. It was held that he could not be sued jointly with his agents in such an action. Say the court, on page 68:

"In an action ex delicto, the act complained of must be the joint act of all the defendants, either in fact or in legal intendment and effect. But the act of a servant or agent is not the act of the master or principal, even in legal intendment or effect, unless the master or principal previously directs or subsequently adopts and ratifies it. Parsons v. Winchell, 5 Cush. 593. There is no contribution among joint wrongdoers, and if David M. Parker could be found guilty as a joint conspirator and defrauder with the other defendants, solely upon evidence of the unauthorized fraudulent acts and representations of his agent and the person employed by him to aid in effecting a sale, and he should be compelled to satisfy the judgment recovered against all, he would be entirely without remedy for reimbursement, or even contribution against the other defendants, however utterly unauthorized and disapproved those fraudulent acts and representations might have been. Unless, therefore, the plaintiff be able to show the joint participation of David M. Parker in the alleged fraudulent purpose and design of the other defendants, it would be manifestly unjust that he should be holden liable with them in the present action, even though he might be clearly liable, if sued separately, for the damage resulting from the unauthorized fraud of the agent employed by him to sell his property, since it is well settled that a principal has a remedy over for damages he may be compelled to pay in consequence of the unauthorized misfeasance and malfeasance of his agent."

The whole line of authorities holding a contrary doctrine was rested on the language of Judge Cowen in the case of Wright v. Wilcox, 19 Wend. 343:

"In a case of strict negligence by a servant while employed in the service of his master, I see no reason why an action will not lie against both jointly. They are both guilty of the same negligence, at the same time, and under the same circumstances,—the servant in fact, and the master constructively, by the servant, his agent. Mr. Hammond lays down the rule in this way: 'Whether the principal and inferior may be charged jointly depends on whether the inferior is liable as a trespasser vi et armis, or in case only. If the latter, they may be sued together, but otherwise if the former; it being held, how justly may be questioned, that a principal is liable for his agent's misconduct only in case.' Ham. Parties, 85, 86. The rule is, in the main, doubtless, right, but seems to be shaken by Moreton v. Hardern, 6 Dowl. & R. 275, in respect to the quality of the servant's act. There were, in that case, three proprietors of a coach. One was driving, and ran against the plaintiff's cart. All three were sued in case, and several judges thought either trespass or case would lie against the driver, though the mischief arose from mere negligence, but all agreed that case only would lie against the other two who were absent; yet the action was maintained against all three."

The English case of Moreton v. Hardern, above cited, is not at all in conflict with the view taken of the cases in Massachusetts, and other cases cited above, in which it is held that a master is not jointly liable with the servant for mere negligence. In that case the three owners of the coach were held liable jointly for the act of one of them. In that case the three were all principals, and were responsible for the act of the one who was the servant. The fact, therefore, that they were jointly sued, and the suit was maintained, did not at all establish the principle that, if the one through whom the injury had been inflicted was not a principal with the

other 'two, a suit against the three could have been sustained. This distinction is pointed out by Judge Metcalfe in Parsons v. Winchell, supra. It is an incorrect statement to say that the master contributes in any sense to the injury inflicted by the mere negligence of his servant in his absence. Where he commands or directs such an injury, he, of course, aids or abets its commission, and does, therefore, in this way, contribute directly to it, and is jointly liable with his servant; but, where he is liable although he may have expressly commanded the servant not to do that which results in injury, it seems a contradiction in terms to say that he jointly acted with the servant to cause the loss. The subsequent cases, which follow that of Wright v. Wilcox, do not discuss the principle, but refer only to that of Wright v. Wilcox. It should be said that Judge Cowen's remark in Wright v. Wilcox was not necessary to the decision of the case, and was an obiter dictum.

In all cases where the master could have been held liable in trespass for the act of the servant at common law, a joint action would lie against them for trespass. Such actions against a master were limited to cases where he personally interfered, or where he directed his agent or servant to do something which would naturally result in the injury for which recovery was sought. The distinction is clearly brought out by Baron Parke in the leading case of Sharrod v. Railway Co., 4 Exch. 580. That was an action against a railroad company to recover damages for injury to sheep that had been struck by a railway train of the defendant. The sheep had come upon the track in consequence of defective fences. The train was an express train, the engineer of which had directions to drive at a certain rate per hour. It was suggested that, in going at this rate, in the dusk of the evening, when the accident happened, the driver could not have seen the sheep in time to avoid the collision. It was objected that the form of action was improper, it being trespass, while it should be case. Baron Parke used the following language:

"The immediate act which caused the damage to the plaintiff's cattle was the impact of a machine which was under the control of a rational agent, the servant of the defendants; not so much so, indeed, as a horse, or carriage drawn by horses, or propelled by mechanical power along an ordinary highway, would be, in which cases both the direction and the speed of the machine are under government, but still in such a degree as to make the cases similar for the purpose of deciding the present question. We may treat the case, then, as if the damage had been done by an ordinary carriage drawn by horses; and, it being now settled that an action of trespass will lie against a corporation, we may consider, for the present purpose, the defendants as one natural person, and the carriage under the care of his servants. Now, the law is well established, on the one hand, that whenever the injury done to the plaintiff results from the immediate force of the defendant himself, whether intentionally or not, the plaintiff may bring an action of trespass; on the other, that if the act be that of the servant, and be negligent, not willful, case is the only remedy against the master. The maxim, 'Qui facit per alium facit per se,' renders the master liable for all the negligent acts of the servant in the course of his employment; but that liability does not make the direct act of the servant the direct act of the master. Trespass will not lie against him. Case will, in effect, for employing a careless servant; but not trespass, unless, as was said by the court in Morley v. Gaisford, 2 H. Bl. 442, the act was done by his command,—that is, unless either the

particular act which constitutes the trespass is ordered to be done by the principal, or some act which comprises it, or some act which leads by a physical necessity to the act complained of. The former is the case when one, as servant, is ordered to enter a close to try a right or otherwise; the latter, when such a case occurs as Gregory v. Piper, 9 Barn. & C. 591, where the rubbish ordered to be removed, from a natural necessity, fell on the plaintiff's soil; but, when the act is that of the servant in performing his duty to his master, the rule of law we consider to be that case is the only remedy against the master, and then only is maintainable when that act is negligent or improper. And this rule applies to all cases where the carriage or cattle of a master is placed in the care and under the management of a servant, a rational agent. The agent's direct act or trespass is not the direct act of the master. Each blow of the whip, whether skillful and careful, or not, is not the blow of the master. It is the voluntary act of the servant. Nor can it, we think, be reasonably said that all the acts done in the skillful and careful conduct of the carriage are those of the master, for which he is responsible in an action of trespass, to the same extent as if he had given them himself, because he has impliedly ordered them, but those that were careless and unskillful were not, for he has given no order, except to use skill and care. Our opinion is that, in all cases where a master gives the direction and control over a carriage or animal or chattel to another rational agent, the master is only responsible, in an action on the case, for want of skill or care of the agent,—no more. Consequently, this action cannot be supported."

Though the question in the case cited concerned forms of procedure, the distinction there mentioned goes deeper than mere form, and is a distinction between those acts in which the master is really a co-actor with the servant, and those in which his responsibility is based merely on the rule of law that makes him liable for the negligence of his servant in and about his business. It does not explain away the effect of the decisions in Massachusetts, New Hampshire, Maine, and Ohio, above quoted, to say that they merely went to the question of whether you could unite an action on the case with an action for trespass, because, under the procedure in nearly all of them, case and trespass could be united in one action, and the distinction between them as forms of action had been abolished. On principle, we have no hesitation in taking the view so logically upheld by the Massachusetts courts, and in deciding that a suit against a principal and the agent, by the mere negligence of the agent, in the absence of the principal, is a misjoinder, and that the causes of action are not joint, but several.

The conclusion thus reached may be somewhat at variance with some remarks which were made incidentally in the cases of Powers v. Railway Co., 65 Fed. 129, and Hukill v. Railway Co., 65 Fed. 138, and which were not necessary to the conclusions there announced; but the question of joint liability of master and servant, fully argued and considered in this cause, was but little considered there, and the right of a plaintiff to join them in every case of negligence by the servant alone was assumed rather than decided.

The engineer in this case was improperly joined as a defendant with the railway company, the railway company has the right to have the suit against it tried in this court, and the motion to remand the same is denied.