Argued March 11, decided May 18, 1909.

## GALVIN v. BROWN & McCABE.

[101 Pac. 671.]

MASTER AND SERVANT—INJURIES TO SERVANT—CONCURRENT NEGLIGENCE OF MASTER AND FELLOW SERVANT.

1. A master is liable for an injury to a servant caused by the master's negligence and the concurrent negligence of a fellow servant, and which would not have occurred had the master performed his duty.

MASTER AND SERVANT—INJURY TO SERVANT—COMPLAINT—EVIDENCE—VARIANCE.

2. There is no variance between the complaint, in an action for the death of an employee while storing lumber in the hold of a vessel by a timber fall-

ing from a sling load, which alleged that the cause of the accident was the order of the employer's superintendent to load five timbers instead of four, and the proof that the method of loading five timbers was dangerous, where the same had to be dragged some considerable distance over a rough board roadway, and that the superintendent was so informed at the time he made the order, and directed the manner of arranging the timber.

MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE—QUESTION FOR JURY.

3. In an action for the death of an employee while storing lumber in the hold of a vessel, by a timber falling from a sling load, evidence *held* to require the submission to the jury of the issue of the negligence of the superintendent in ordering loads of five timbers instead of four.

TRIAL—QUESTION FOR JURY.

4. Where two inferences may be legitimately drawn from the facts, one favorable, and the other unfavorable to defendant, a question for the jury is presented.

NEGLIGENCE—QUESTION FOR JURY.

5. The mere proof of an accident ordinarily raises no presumption of negligence; but, where it is accompanied by proof of facts from which an inference of negligence may or may not be drawn, the case must be submitted to the jury.

MASTER AND SERVANT—INJURY TO SERVANT—DUTY TO PROMULGATE RULES.

6. A master is not required to superintend and direct the manner of the execution of the mere details of the work, and as to such details is not required to prescribe rules.

MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE OF FELLOW SERVANT—DELEGABLE DUTIES.

7. A stevedore, who procures experienced servants to load a vessel with timber, may intrust the manner of the making of the sling loads to such servants, and thereby free itself from liability for injury to a servant through the negligence of fellow servants.

MASTER AND SERVANT—INJURY TO SERVANT—NEGLIGENCE OF FELLOW SERVANT—SUPERINTENDENT.

8. The act of the superintendent of a corporation engaged in loading vessels, in directing the servants engaged in loading a vessel with lumber to load five timbers in a sling load instead of four, made with a view of hastening the work, and completing it within the time contracted for, was the act of the corporation, where he, an officer thereof, was superintending the loading of several vessels, and went from dock to dock and ship to ship to see that the work progressed to the satisfaction of the dock people, charterers, and the corporation, and the corporation was liable for injuries to an employee in consequence of the negligence of the superintendent.

MASTER AND SERVANT—SAFE PLACE TO WORK—OBLIGATION OF MASTER.

9. An employer must keep the place where a servant is at work in a reasonably safe condition, consistent with the character of the work.

MASTER AND SERVANT—METHODS OF WORK.

10. Where a master directs a servant to do work in a manner not reasonably safe, and the performance of the work in the manner directed is the proximate cause of injury to the servant, the master is negligent.

MASTER AND SERVANT—NEGLIGENCE OF FELLOW SERVANT—NEGLI-
GENCE OF SUPERINTENDENT IN GIVING ORDERS.

11. Where a negligent order causing injury to an employee was given by a
superintendent of the employer, and the order was incident to the perform-
ance of the duties of his position as superintendent, the master was liable for
the injuries, whether the order negligently directed the employee to use dan-
gerously defective appliances, or to work in an abnormally dangerous place,
or to work in a dangerous manner, or to do something rendering the place of
work abnormally dangerous for a fellow servant.

MASTER AND SERVANT—INJURY TO SERVANT—ASSUMPTION OF RISK—
KNOWLEDGE OF DANGER.

12. An employee does not assume risks arising from the negligent act of
the employer, of which he has no knowledge, and by reasonable intendment
cannot know.

MASTER AND SERVANT—INJURY TO SERVANT—ASSUMPTION OF RISK—
KNOWLEDGE OF DANGER.

13 Assumption of risk is not predicable from mere knowledge of condi-
tions alone, but the servant must have appreciated the danger.

MASTER AND SERVANT—INJURY TO SERVANT—ASSUMPTION OF RISK—
QUESTION FOR JURY.

14. An experienced longshoreman was killed while storing lumber in the
hold of a vessel, by a timber from a sling load falling on him. The load con-
sisted of five timbers, and was dangerous because of that fact. Two loads of
five timbers had previously been lowered into the hatch, and he must have
assisted in stowing one of the loads. *Held*, that he did not, as a matter of law,
assume the risk of injury arising from loading five timbers into a sling load.

MASTER AND SERVANT—INJURY TO SERVANT—JOINT LIABILITY OF
MASTER AND SUPERINTENDENT.

15. An action for the death of an employee of a corporation, in conse-
quence of the negligent act of the superintendent of the corporation, may be
brought against the corporation and the superintendent as joint tort-feasors.

MASTER AND SERVANT—INJURY TO SERVANT—EVIDENCE OF OTHER
ACCIDENTS.

16. In an action for the death of a servant, evidence of other accidents or
acts of negligence, as a general rule, is inadmissible to show the negligence
of the employer, unless shown to be closely connected with the accident com-
plained of as to time, place, and circumstances.

MASTER AND SERVANT—INJURY TO SERVANT—EVIDENCE OF OTHER
ACCIDENTS.

17. Evidence of prior accidents at the same place, and under similar cir-
cumstances and conditions, is admissible to show that an appliance or place is
dangerous, and that the employer could reasonably have apprehended the
happening of the accident which it was his duty to guard against.

MASTER AND SERVANT—INJURY TO SERVANT—EVIDENCE OF SIMILAR
TRANSACTIONS.

18. Where, in an action for the death of an employee while storing lumber
in the hold of a vessel, in consequence of a timber falling from a sling load,
the evidence showed that the superintendent of the employer directed the
loading of five timbers in a sling load, though employees engaged in making
the loads informed him that it was dangerous to have more than four timbers
in a load, evidence that employees working at other hatches of the same ves-
sel informed the superintendent immediately prior to the accident that loads
of five timbers were dangerous was admissible to show knowledge of the

employer that the method of doing the work as ordered by the superintendent was dangerous, and to rebut any presumption that the order was the result of a mistake of judgment.

APPEAL AND ERROR — RECORD — RULINGS ON EVIDENCE — SHOWING OBJECTIONS.

19.  Where the bill of exceptions does not show that an objection was made to the admission of certain testimony, an objection to the competency thereof, urged on appeal, cannot be considered.

APPEAL AND ERROR—RECORD—RULINGS ON INSTRUCTIONS—SHOWING EXCEPTIONS.

20.  Where no exceptions appear in the record to the rulings on the instructions, error urged as to the instructions cannot be considered.

MASTER AND SERVANT—INJURY TO SERVANT—EVIDENCE—INSTRUCTION.

21.  Where, in an action for the death of an employee while storing lumber in the hold of a vessel by a timber falling from a sling load, the evidence showed that five pieces were joined together as directed by the superintendent of the employer; that one of the pieces fell from the load; that the order of the superintendent was negligently made, etc.,—an instruction that, if the injury was caused by the way in which the five pieces of timber were joined together, or by joining five pieces together, and the way in which they were joined together was negligently performed by the employee's fellow servants, · and such negligence contributed to the injury of the employee, there could be no recovery, was erroneous, as amounting to a directed verdict for the employer, though the jury might find that the injury was caused by chaining five pieces together pursuant to the negligent order of the superintendent.

TRIAL—REFUSAL TO GIVE INSTRUCTION COVERED BY THE CHARGE GIVEN.

22.  It is not error to refuse requested instructions substantially covered in the charge given.

From Multnomah: ARTHUR L. FRAZER, Judge.

Statement by MR. COMMISSIONER SLATER.

This action was brought by Ellen Galvin, administratrix of the estate of her deceased husband, Michael Galvin, to recover damages for his death, occurring June 11, 1906, occasioned by injuries received two days prior thereto while in the employ of Brown & McCabe, and as the result of their and Matthew Troy's alleged joint negligent act. The defendant Brown & McCabe is a corporation engaged in the business of loading vessels at the City of Portland, and at the time of the alleged injury was performing a contract to load the steamer Dulwich with a cargo of lumber. Matthew Troy was the general superintendent of the corporation. At the time of receiving his injury, deceased was in the service of Brown & McCabe, engaged as stevedore in stowing lum-

ber in the hold of the vessel after it had been lowered therein by other employees of the corporation. For the purpose of conveniently and expeditiously conveying the lumber from the dock into the hold, four pieces were placed into a "sling load" on the dock by two men, whose work was superintended or directed by a foreman. The "sling load" when made was bound by a chain, which was attached to a wire cable. This ran through pulleys on the mast and yard-arm, and was attached to a winch engine, which constituted the hoisting apparatus, by means of which the load was dragged from the dock and hoisted over the hatch and then lowered into the hold.

On June 9, 1906, a heavy timber slipped from a "sling load" while it was being lowered into the hold, and, coming in contact with the side of the hatchway, bounded to one side of the hold, striking the deceased, and so injuring him that he died two days thereafter. The amended complaint, after alleging the relationship of the parties, sets forth, somewhat in detail, matters of an ev·dentiary character, as to the manner or method employed by the men on the dock in performing their work, in substance, so far as material, that they had been putting four heavy timbers together to make a "sling load," which, it is alleged, was a safe method of transferring the timber, but that Troy came along and ordered them to put five timbers into a "sling load," which was an unsafe method, because one of them would be sure to slip out and fall into the hold and be liable to cause an injury to the men employed therein, and that the laborers engaged to make the "sling load" so informed Troy at the time he gave the order. Notwithstanding the warning, the latter insisted that his directions be carried out, which was done, and soon thereafter one piece of timber slipped from the sling, while it was over the hatch, which fell into the hold and struck Galvin, as stated. The negligence charged is that Brown &

McCabe failed to keep the place in which Galvin was
at work, in a reasonably safe condition, in that he was
placed in a position of danger by the hoisting apparatus
swinging the heavy timbers above him when they were
not securely fastened, and that, although it was unsafe
and dangerous to the men working in the hold to carry
"sling loads" containing five timbers, yet Matthew Troy,
for himself and as superintendent and agent of Brown
& McCabe, ordered the men working on the dock to put
five timbers into each "sling load," and as a result of
this direction a heavy timber fell from a "sling load"
made of five timbers, and struck the deceased.

The material averments of the amended complaint are
denied by the joint answer of the defendants, and, in
addition, three affirmative defenses are pleaded: (1) That
the negligent acts causing the injury complained of were
the acts of fellow servants of the deceased; (2) that
the liability of the timber falling from the "sling load"
was a risk and danger naturally incident to the work in
which the deceased was engaged, and that he assumed
such risk; (3) that the deceased was guilty of con-
tributory negligence.

Plaintiff's reply denied the new matter of the answer.
At the close of plaintiff's testimony defendants moved
for a judgment of nonsuit upon the following grounds:
(1) That plaintiff had failed to prove a case sufficient
to be submitted to the jury; (2) that there was no evi-
dence of negligence by Brown & McCabe; (3) that there
was no evidence of negligence as to Matthew Troy;
(4) that the accident was caused by a risk assumed by
the plaintiff's intestate; and (5) that the negligence,
if any, was that of a fellow servant, for which Brown
& McCabe was not responsible. The motion being denied,
the defendants moved that plaintiff be required to elect
whether she would proceed to the jury against Brown
& McCabe, or against Troy, upon the ground that defend-
ants could not be sued jointly. This motion was also

overruled, and at the close of the defendants' case it was renewed with a like result. There was also a motion by each of the defendants for a directed verdict as to each of them, on the ground that the action is joint, and that Brown & McCabe and Troy cannot be sued jointly in tort upon the facts stated in the complaint.

A verdict was returned in favor of plaintiff and against both defendants. Judgment was entered thereon, from which defendants have appealed.          AFFIRMED.

For appellants there was a brief over the names of *Mr. William D. Fenton, Mr. Rufus A. Leiter,* and *Mr. Arthur M. Dibble,* with an oral argument by *Mr. Leiter.*

For respondent there was a brief and an oral argument by *Mr. Henry E. McGinn.*

MR. JUSTICE SLATER delivered the opinion of the court.

1. It appears from plaintiff's testimony that the timber being loaded was newly sawed and very heavy, and was of a particular class known as "mining timbers," being 8x8 and 8x10 inches in dimensions, and 12 to 20 feet long. Two men, Wm. Lockington and John Murphy, who were experienced longshoremen in this particular class of work, were engaged in making the "sling loads," under the direction of Fred R. Alexander, a gang foreman at hatch No. 1, of the vessel. The deck of the vessel was about on a level with the dock. The loads were prepared on the dock distant from the hatch 60 to 100 feet, over a portion of which the loads were dragged by the cable before it was lifted clear of the deck. The space over which the loads were dragged was rough and uneven, and the operation of dragging was by jerks, so that the loads were liable to be more or less disarranged. Lockington and Murphy had been working two days before the accident occurred, which happened about 10 o'clock in the morning, during which time they had been putting four timbers in each "sling load." This was done by placing four timbers upon a cross-beam

or block so that one end of the timbers would be raised
from the floor, leaving four to five feet thereof free to
permit the placing of a chain under and around them,
to which the cable was attached. The four timbers were
arranged in the form of a square, as near as the dimen-
sions would permit. When arranged in this manner the
binding chain came in contact with a corner of each
piece, and, however the load might be jostled about, there
was no chance for a timber to get out; but, by putting
five timbers in, there would be an odd one, and a chance
for one of them to get out. A short time before the acci-
dent Matthew Troy, the general superintendent of the
corporation, came upon the dock and directed Lockington
and Murphy to put five timbers into each "sling load"
instead of four. To this Murphy objected, saying it was
dangerous. Troy insisted, and, obeying the order,
Murphy and Lockington were about to lift the fifth tim-
ber, and to place it on top of the four, forming a pyramid,
when Troy directed them not to lift it, but to "roll it
in on the side," thereby making the load consist of three
pieces on the bottom, and two on the top. It was from
the third load so prepared that the middle timber of the
bottom row fell, causing the injury. Immediately pre-
ceding or after the giving of this order Troy went to the
men laboring at hatches 2 and 3, and gave similar orders,
and like objections to the safety thereof were made.
Eight men were working in the hold, stowing lumber
lowered through hatch No. 1, four on each side thereof,
who took every alternate load. They were required
to be ready to receive the load as it came down and guide
it onto a dolly, or roller, and get it out of the way before
the arrival of the next load, which required the men to
work rapidly, and to the utmost of their ability. Galvin
was on the side of the hold opposite to the dock, and the
load from which the timber fell was to have been lowered
upon his side. A warning was given by the hatch tender
to the men in the hold when the timber, which fell,

started from the sling. Galvin, with the others, ran back into the "wings" of the hold to escape, and went as far as possible in the direction he was going, but the timber bounded over into the side of the vessel where he was and struck him. It is urged in support of the motion for a nonsuit: (1) That the evidence as to negligence was insufficient and conjectural; (2) that the accident resulted from a risk and danger naturally incident to the work, and voluntarily assumed by the deceased; and (3) that the negligence, if any, was that of a fellow servant.

That the accident was the result of a negligent act is affirmatively asserted in the answer, where it is alleged:

"That, while a sling load of five timbers of the dimensions above described was being loaded into said vessel, the same being a proper and suitable number of said timbers to be placed in said sling load, in accordance with the customs of loading vessels in this community and elsewhere with similar timbers, the said sling load of said timbers was so carelessly and negligently fastened and hooked by the co-employees of plaintiff's deceased * * that one of the timbers slipped out from the said sling load and fell into the hold of said vessel, and then and there struck plaintiff's deceased, thereby occasioning the injuries complained of."

The issue, therefore, was narrowed to the question whether the slipping of the timber from the load was the result of Troy's order given to the men, or of some negligence by Lockington and Murphy in fastening and hooking the chain which bound and held the timbers together. It must be conceded that these two persons were fellow servants of the deceased, as they were at the time engaged in a common enterprise; but we are equally clear that Troy, in giving the order, was acting as, and for, the master; and, if the order given by him was the primary cause of the injury, the concurring negligence, if any, of the two fellow servants of plaintiff's deceased would not relieve the master. The master is liable for an injury

to a servant which is caused by his own negligence and the concurrent negligence of a fellow servant, which would not have happened had the master performed his duty. *Trickey* v. *Clark*, 50 Or. 516 (93 Pac. 457) ; *N. W. Fuel Co.* v. *Davidson*, 57 Fed. 919 (6 C. C. A. 636).

2. It is claimed in this connection that there is a variance between the allegation of proof of negligence in this: That the cause of the accident is averred to be the order of Troy to load five timbers instead of four, while it is insisted that the proof is that Troy, not only ordered five timbers to be put into a "sling load," but also directed the manner in which they should be put together and fastened with the chain, and that Murphy objected to the manner or method of arranging the timbers in the load, and not to the order to load five. It is also insisted that all of plaintiff's witnesses testified that the method of loading five timbers was dangerous, and that the safe and proper way to load them was to pile them in the form of a pyramid, the fifth timber being on top and to hook the chain on top of the fifth timber, while Troy directed them to "roll the fifth stick in on the side" of the bottom layer, and that this was the cause of one of them slipping out, and for this reason it is claimed that there was no evidence to support the complaint. But this conclusion is not sustained by a careful inspection of the evidence. Lockington did testify, as pointed out, that, after Troy had given the order to put in five instead of four timbers, he and Murphy were about to take the fifth timber up and lift it on top "where it would be safe," when Troy said to them: "Never mind, roll it in along the side there; it is all right." Then Murphy said to Troy: "This is dangerous work." But on cross-examination he makes it clear that the objection was not limited to the manner of arranging the five timbers ordered to be put into the load, for he testified that to put five timbers in a load in the manner he and Murphy were about to do, and by hooking the chain in the manner

illustrated by him to the jury, was safe only where the
load is near to, or at, the hatch; so that the load would
be lifted with no danger of any timber slipping out;
but he had previously explained that the load was made
60 feet or more away from the hatch, and had to be
dragged 20 to 30 feet of that distance over a rough board
roadway in a somewhat jerky manner, and says:

"Where they are dragging, like that, four timbers will
never come out, where five will."

Murphy's testimony is to the same effect.

3. From the evidence it may fairly and reasonably be
inferred that the placing of five timbers in the "sling
load," however they may have been arranged, and how-
ever the chain may have been fastened about them, was
the proximate cause of one of them slipping out while
the load was being conveyed to the hold of the vessel,
and the direction to put that number in the load having
been given by Troy, with notice or knowledge of prob-
able injury resulting, there was evidence upon which to
submit the cause to the jury.

4. Because a contrary inference, in accord with the
contention of defendants' counsel, may also have been
reasonably drawn from the same testimony, that does
not thereby render the proof of negligence conjectural;
but "the rule is that if two inferences may be legitimately
drawn from the facts in evidence, one favorable, and the
other unfavorable, to the defendant, a question is pre-
sented which calls for the opinion of the jury.

5. "If, however, there is no proof of any fact by which
the defendants' conduct may be ascertained, there is
nothing for the jury. The mere proof of an accident,
therefore, ordinarily raises no presumption of negligence;
but, where it is accompanied by proof of facts and cir-
cumstances from which an inference of negligence may or
may not be drawn, the case cannot be determined by the
court as a matter of law, but must be submitted to the
jury." *Geldard* v. *Marshall*, 43 Or. 438 (73 Pac. 330).

6. Again, it is urged that the act of Troy in directing. the men to place five timbers in a "sling load" was the act of a fellow servant, with reference to a detail of the work for which the master was not responsible, and therefore the motion should have been sustained as to Brown & McCabe. A master is not required to superintend and direct the manner of the execution of mere details of the work; and, where such has been negligently done by a servant to the injury of a fellow servant, the master would not be liable for a failure to prescribe a rule or regulation. *Wagner* v. *Portland,* 40 Or. 389 (60 Pac. 985: 67 Pac. 300).

7. So in this case Brown & McCabe, having procured servants of experience to perform this particular work, could have intrusted the manner and method of the making of the "sling load" to such servants, and thereby freed itself from liability for injury, if any should have happened, to a fellow servant through their negligence.

8. The record shows that as long as the laborers were allowed to exercise their skill and judgment in the performance of their duties, the business was safely conducted. But in order that the loading of the vessel might be hastened and completed within the time contracted, and not to promote or secure the safety of its servants in the hold of the vessel, the master, through its general superintending officer, saw fit to give this order and direct the manner of its execution; for Troy, by his own testimony, is a stockholder and an officer of the corporation, being the general superintendent of its work, and at this particular time was superintending the loading of about 20 vessels in the harbor at Portland, and went from dock to dock, and ship to ship, to see that the work progressed to the satisfaction of the dock people, the charterers, and the defendant corporation.

9. The duty was upon the corporation to keep the place where Galvin was at work in a reasonably safe condition consistent with the character of work to be done by him;

and, if by its negligent act that duty was violated, it must assume the burden. *Brick Co.* v. *Shanks,* 69 Kan. 310 (76 Pac. 856).

10. In giving the order Troy was acting not only within his line of duty, but was, in fact, then the official representative of the corporation, and was performing an act with notice that it affected his duty towards the men in the hold of the vessel.

"If a master directs a servant to do certain work in a manner not reasonably safe, and the performance of the work in the manner directed is the proximate cause of injury to the servant, the master is guilty of actionable negligence." 26 Cyc. 1153.

11. While there are some decisions that absolve the master even from the results of complying with the negligent order of a vice principal, where such order relates merely to the details of the work, yet it is said in 2 Lebatt, Master and Servant, § 541:

"There is an overwhelming weight of authority to sustain the doctrine that the liability to which the master is declared to be subject wherever 'the negligent act is a direct result of the exercise of power conferred by the master, in the performance of a duty devolving by law upon him,' is predicable in the case of orders issued in respect to work, whatever may be the precise object to which those orders may have relation. It is, in fact, difficult to see what more indisputable example there can be of an 'exercise of authority' than the giving of such orders; and, for the purpose of affecting the master with liability in this instance, it is obviously quite immaterial whether the delinquent employee be a mere superior servant or a general or departmental manager. According to the great majority of the cases, therefore, all that is necessary to fix liability upon the master is that the negligent order which caused the injury should be proved to be incident to the performance of the duties of his position. The order may be a negligent one because the servant is directed to use dangerously defective appliances, or to work in an abnormally dangerous place, or to do work in a dangerous manner, or to do something

which, under the circumstances, will render the place of work abnormally dangerous for a fellow servant."

12. It is also urged that Galvin, being experienced in the work in which he was engaged, assumed the risk of an injury arising from the dangers naturally incident to his employment, and the risk of those extraordinary dangers which are apparent, or which he knows and appreciates. The statement of the rule may be conceded to be correct, but it does not imply that he also assumes those additional risks arising by the negligent act of the master after he has entered upon the performance of his work, and of which he has no knowledge, and by reasonable intendment could not be held to have known. 1 Labatt, § 2; *Miller* v. *Inman*, 40 Or. 161 (66 Pac. 713).

13. In *Brown* v. *Oregon Lumber Co.*, 24 Or. 315 (33 Pac. 557), the plaintiff was employed in piling ties in a box car. The foreman ordered him to hurry up, and to pile the ties without blocking them, which he did, but by reason of the absence of the blocking, a pile of ties fell upon him, and for the injury suffered he sued. The court held that as the increased danger was evident, and must have been appreciated by the plaintiff, he, as a matter of law, assumed the risk. Likewise in *Stager* v. *Troy Laundry Co.*, 38 Or. 480, 485 (63 Pac. 645, 646: 53 L. R. A. 459), it was said, in reference to the assumption by an employee of risks arising subsequent to the employment and during the course of the service, that: "If he voluntarily continues, however, without complaint or objection, after knowledge or notice of their existence, under conditions by which he is chargeable with an appreciation of the danger, and where ordinary prudence would require of him a different course, he is held also to take upon himself the responsibility entailed by the risk he continues to incur." In each of these cases knowledge and appreciation of the increased risk by the injured servant form the basis of the opinion.

14. It is contended by counsel for defendants that, because two loads of five timbers had been lowered into the hatch where Galvin was working before the accident happened, he must have assisted in stowing one of these loads, and from this fact the conclusion is drawn that, as a matter of law, if there was anything inherently dangerous in five timbers being included in one load, Galvin, as an experienced longshoreman, must have known it, and, thus knowing and continuing in the employment, he assumed the risk of being injured by reason of that number of timbers being lowered in each "sling load." Assumption of risk, however, is not predicable from mere knowledge of conditions alone (1 Labatt, § 279a; *Millen* v. *Pacific Bridge Co.*, 51 Or. 538: 95 Pac. 196), but the circumstances must be such that no other inference than that he appreciated the danger is fairly deducible therefrom. We are not able to say, as a matter of law, under the circumstances of this case, as shown by the plaintiff's testimony, that Galvin must have known that five timbers were being lowered at a time, as an inference from the bare fact that he may have assisted in stowing away one of such loads. In the great hurry and severe physical strain to which these men were subjected in the hold of the vessel, the fact that such was the case may have easily been unobserved. Much less would it be possible to say, as a matter of law, that, knowing of that fact, he, in the short space of time that intervened, and while under such strain, fully or at all contemplated the situation as it actually was upon the dock, and the circumstances that rendered dangerous the method employed in loading these timbers. The nonsuit was properly denied.

15. Whether the master and its servant can be joined as the perpetrators of a joint tort for an injury inflicted by the negligence of the servant, without the presence of the master, and without his express direction, is a question upon which the authorities do not agree. Reference

may be made to 15 Pl. & Pr. 560, where the authorities
upon each side of the controversy are given, and also
to *Warax* v. *Ry. Co.* (C. C.) 72 Fed. 637, where they are
generally and ably reviewed by Justice TAFT. In
this case, however, we are not under the necessity of
determining that question, for it is conceded by all of
the cases that, where the negligent act complained of
was, in fact, or by legal intendment, the joint act of the
principal and the agent, both can be jointly sued. *Parsons*
v. *Winchell,* 59 Mass. 592 (52 Am. Dec. 745) ; *Mulchey*
v. *Religious Society,* 125 Mass. 487; *Page* v. *Parker,* 40
N. H. 47. In *Warax* v. *Ry. Co.* (C. C.) 72 Fed. 637,
much relied upon by the defendants, the question arose
upon a construction of the complaint as to whether it
stated facts amounting to a joint act or negligence,
alleged to have been committed by the corporation and
one of its engineers in backing some cars against other
cars, injuring a brakeman.  The averments of the petition
were, in substance, that the engineer acted as the agent
and servant of the defendant, and that the injury was
caused by the defendant corporation by the movement
of the engine.  The court construed this to mean that
the acts complained of were the acts of the defendant,
only because committed by and through its agent and
servant, the engineer, and that the conclusion that the
acts were the result of the joint negligence of the defend-
ant railroad company and the engineer, was a mere con-
clusion of law, based on the proposition that, where the
engineer, through his negligence, does an injury in the
scope of his employment, he and his principal are jointly
liable in an action therefor.  Under such facts it was held
that they could not be jointly sued.  But it is significantly
remarked by that learned judge, at page 641 of 72 Fed.,
that: "If plaintiff intended to charge that the defendant
was present by any corporate or superintending officer,
so as to constitute what would be a personal interference
in the acts complained of by the master, he should have

made his position specific upon this point." By which it was conceded that, where the act of negligence is the act of a corporate or superintending officer, as in this case, it is the act of the corporation. For this reason no error was committed by the trial court in overruling the motion to require plaintiff to elect, or in denying the motion for a directed verdict.

16. Error is assigned because John Maher, Fred Jackson, and Thomas Regan, who were working at hatches 2 and 3 of the same vessel, and in the same capacity as Lockington and Murphy, were allowed, over the defendants' objections, to give in evidence conversations occurring between them and Troy immediately prior to the happening of the accident, and referring to orders or directions given them by Troy, which were of the same character as those given by him to Lockington and Murphy, and their response thereto that it was dangerous. It is urged that these conversations were not a part of the *res gestae,* and were collateral to the main inquiry, and highly prejudicial to defendants.

"As a general rule, in an action by a servant for personal injuries, other accidents or acts of negligence are inadmissible in evidence to show negligence on the part of the defendant, unless shown to be closely connected with the accident complained of as to time, place, and circumstances." 26 Cyc. 1429.

17. Evidence that other accidents had previously happened at the same place, under circumstances and conditions similar to those in the case on trial, is sometimes competent for two purposes: (1) To show that an appliance or place is defective or dangerous; and (2) to show that the defendant could reasonably have apprehended the happening of such accidents, against which it was their duty to guard or warn their employees. *Wyman* v. *Orr,* 47 App. Dic. 136 (62 N. Y. Supp. 195) ; *Bailey* v. *R. W. & O. R. Co.,* 139 N. Y. 302 (34 N. E. 918) ; *Shute* v. *Exeter Mfg. Co.,* 69 N. H. 210 (40 Atl.

391) ; *Spaulding* v. *Forbes,* 171 Mass. 271 (50 N. E. 543 : 68 Am. St. Rep. 424) ; ·*Wabash Screen Door Co.* v. *Black,* 126 Fed. 721 (61 C. C. A. 639) ; *Franke* v. *Hanly,* 215 Ill. 216 (74 N. E. 130).

18. We think the evidence objected to was properly admitted for the purpose of showing notice or knowledge on the part of these defendants that the change in the method of doing the work as ordered by Troy was dangerous, and to rebut any inference or presumption that the order was the result of a mistake of judgment on his part, as to its safety; in other words, that it tends to prove that it was negligently done.

19. The objection urged to the competency of the testimony given in rebuttal by the witness Murphy, relative to an admission made to him by Fred B. Alexander, to the effect that the hoisting or slinging of five timbers in one sling was dangerous to the men in the hold, cannot be considered because it does not appear from the bill of exceptions that an objection was made to the admission of the testimony.

20. The same may be said as to the errors urged upon the instructions as given by the court, for no exceptions thereto appear in the record.

21. The defendants requested, and were refused, this instruction :

"If you find from the evidence that the injury to plaintiff's intestate, Michael Galvin, was caused by the way and manner in which the five pieces of timber were chained together or by chaining five pieces together, instead of four, and in either case that the way and manner in which they were chained together was negligently performed by the fellow servants of plaintiff's intestate, or that in joining five pieces together plaintiff's fellow servants were negligent, but that such negligence caused or contributed to the death of Michael Galvin, then I instruct you that plaintiff would not be· entitled to recover."

This, in effect, would amount to a directed verdict for the defendants, for it means that, although the jury may

find from the evidence that the injury was caused "by chaining five pieces together, instead of four," the plaintiff would not be entitled to recover. That five pieces were chained together, and that it was done by the order of Troy, as the superintending officer of the corporation, was not disputed at the trial. We have held that the circumstances under which it was given, as disclosed by the plaintiff's case, were such that the inference might be fairly and reasonably drawn that the placing of five timbers in one load was the proximate cause of the injury, and that defendants, when giving the order, might reasonably have apprehended that injury would result therefrom. The instruction, even if correct in other respects, is too broad, and there was no error in denying it.

22. The remaining instruction requested by the defendants, upon which error is based because of a refusal to give it, was substantially given by the court in its general charge, and therefore no error was committed thereby.

Finding no error in the record, the judgment is affirmed.                              AFFIRMED.