Argued 9 July, decided 3 August, 1903.

## GELDARD v. MARSHALL.

[73 Pac. 330.]

MASTER AND SERVANT— QUESTION OF NEGLIGENCE FOR JURY.

1. A servant was injured by the fall of a heavy timber, due to the breaking of the rope by which it was being lowered. The master was personally superintending the work. The rope had been in use in the work for some time, was old, and, owing to the manner of doing the work, was subject to constant chafing over sharp edges. It broke without extraordinary strain, and had parted the day before. *Held*, that the evidence required the submission of the master's negligence to the jury.

ASSUMPTION OF RISK BY SERVANT.

2. A servant who has assisted but once in lowering timbers by a rope, being then assigned to other work, does not assume the risk of the rope's breaking, even though he knows it parted the previous day through the alleged carelessness of a workman; it not appearing that he had actual knowledge of any defect therein. Moreover, knowing of the breaking, he had a right to assume that a new rope had been substituted by the master.

From Multnomah: ARTHUR L. FRAZER, Judge.

This is an action by Matthew Geldard against J. I. Marshall to recover damages for an injury to the plaintiff alleged to have been caused by the negligence of the defendant. In October, 1901, the defendant was building an elevated roadway at Inman, Poulsen & Co.'s mill in Portland, and plaintiff was employed by him upon the work. The roadway was supported by three rows of piling driven in the ground. Upon the top of each row was placed a plate or cap, twelve inches square, of rough timbers. A part of the work consisted in fastening the rows of piling together with braces, one end of each brace being nailed or spiked near the top of one pile and at the bottom of a pile in the adjoining row. These braces were 4x12 inches in size, and from twenty-eight to thirty-four feet long, weighing about 500 pounds each. They were lowered to their respective places from the top of the caps in about the following manner: The defendant and one of his workmen, standing on a platform near the top of a row of piles to which the upper end of the brace was to be fastened, pushed or shoved the brace out toward the opposite row of piles; and a workman standing on the cap of the latter, by slacking a rope attached to the end of the brace, and passing once around the cap on which he was standing, lowered the end to the place where it was to be fastened near the bottom of the pile. There were forty-eight of these braces used in the work, and all were thus put in place. While the defendant and two of his workmen were engaged in lowering the last one, the rope parted, and the brace fell, striking and knocking down a platform upon which plaintiff was working, and precipitating him to the ground, a distance of twenty-five or thirty feet. The plaintiff had been working on the job for the defendant about ten days. His work did not require him to use the

rope, and he had nothing to do with lowering the braces. A few days before, however, he handled the rope in lowering one brace; but, being too slow to suit the defendant, he was detailed to other work. His duty at the time of the accident was to follow along after the other workmen, and securely spike the braces near the top of one row of piling after they had been put in place, which he was doing when the accident occurred. The rope which broke was three fourths or one inch in diameter, and there was evidence tending to show that it was an old one. The defendant had used it in the manner described in lowering all the braces, and it had parted the day before. Dakin, who was handling the rope at the time of the accident, testified that he was following the orders of the defendant, who was personally present, directing the operations; that he lowered the brace as carefully as he could; that at the time the rope broke it was not moving, because the defendant had ordered him to hold the brace stationary while he and the other workman were putting their end of the brace in place. Meyer, who was also assisting the defendant at the time, testified that he and the defendant were driving the brace in place when the rope parted, but he did not notice how Dakin was letting the rope out. E. D. Pittman, a cordage man, was called to show that using a rope in lowering heavy timbers in the manner described would have a tendency to chafe and soon wear it out. The negligence charged is that the rope which broke and allowed the brace to fall was unsafe, defective, and insufficient, to the knowledge of the defendant. The answer sets up three defenses: (1) That plaintiff so carelessly allowed his attention to be diverted from his surroundings and duties as to step and fall from the platform; (2) that he assumed all the risks and dangers connected with and incident to the use of the rope, as a part of his employment; and (3) that his accident was due to the negligence of a fellow servant.

At the close of the plaintiff's testimony, the court directed a nonsuit, and from the judgment entered thereon the plaintiff appeals.                              REVERSED.

For appellant there was an oral argument by *Mr. Stewart B. Linthicum*, with a brief over the name of *Williams, Wood & Linthicum* to this effect:

I. It is the duty of the master to provide and maintain reasonably safe and suitable appliances for the conduct of the work: *Miller* v. *Southern Pac. Co.* 20 Or. 285 (26 Pac. 70); *Knahtla* v. *Oregon S. L. Ry. Co.* 21 Or. 136–143 (27 Pac 91); *Mast* v. *Kern*, 34 Or. 247 (75 Am. St. Rep. 508, note, 5 Am. Neg. Rep. 88, 54 Pac. 950); *Brunell* v. *Southern Pac. Co.* 34 Or. 257 (5 Am. Neg. Rep. 711, 56 Pac. 129); *Wagner* v. *Portland*, 40 Or. 389, 403 (60 Pac. 985, 67 Pac. 300); *Johnson* v. *Portland Stone Co.* 40 Or. 436, 440 (67 Pac. 1013, 68 Pac. 425); *Robinson* v. *Taku Fishing Co.* 42 Or. 537 (71 Pac. 790).

II. Where an appliance is used in a proper manner and a break occurs, the break is in itself evidence that the appliance was defective, and that the master was negligent: *Moynihan* v. *Hills Co.* 146 Mass. 586 (4 Am. St. Rep. 348, 16 N. E. 574); *White* v. *Boston & A. R. Co.* 144 Mass. 404 (11 N. E. 552); *Feital* v. *Middlesex R. Co.* 109 Mass. 398 (12 Am. Rep. 720); *Railroad Co.* v. *Walrath*, 38 Ohio St. 461 (43 Am. Rep. 433); *Westland* v. *Gold Coin Mines Co.*, 101 Fed. 59 ; *Barnowski* v. *Helson*, 89 Mich. 523 (50 N. W. 989, 15 L. R. A. 33); *Mulcairns* v. *Janesville*, 67 Wis. 25 (29 N. W. 565); *Bahr* v. *Lombard*, 58 N. J. Law, 233 (21 Atl. 190).

III. Risks arising from negligence of the master are not risks ordinarily incident to employment, and are not assumed by the servant: *Conlon* v. *Oregon S. L. Ry. Co.* 23 Or. 499, 502 (32 Pac. 397); *Wild* v. *Oregon S. L. Ry. Co.* 21 Or. 159, 164 (27 Pac. 954).

IV. The servant has a right to assume that the master

will furnish safe and proper appliances, and keep the same in good repair : *Johnston* v. *Oregon S. L. Ry. Co.* 23 Or. 94, 104 (31 Pac. 283); *Railway Co.* v. *Archibald,* 170 U. S. 665 (18 Sup. Ct. 777); *New York, N. H. & H. R. R. Co.* v. *O'Leary,* 93 Fed. 741 ; *Achison R. Co.* v. *Swarts,* 58 Kan. 235 ; *Delude* v. *St. Paul City Ry. Co.* 55 Minn. 63 (56 N. W. 461); *Kranz* v. *Long Island Ry. Co.* 123 N. Y. 1 (25 N. E. 206, 20 Am. St. Rep. 716).

For respondent there was an oral argument by *Mr. Jerry E. Bronaugh,* with a brief over the name of *Bronaugh & Bronaugh* to this effect:

(1) A master is not an insurer of the safety of his servant, and is therefore not bound to furnish absolutely safe appliances.   His duty in this behalf is discharged when he furnishes reasonably safe appliances, and he is presumed to have done so, and the burden of proving the master negligent rests upon the complainant, nor, in this State, can the doctrine of *"Res ipsa loquitur"* be substituted for this proof: *Duntley* v. *Inman,* 42 Or. 334 (70 Pac. 529, 59 L. R. A. 785); *Kinkaid* v. *Oregon S. L. Ry. Co.* 22 Or. 35 (29 Pac. 3); *Nutt* v. *Southern Pac. Co.* 25 Or. 291 (35 Pac. 653); *Walsh* v. *Oregon Ry. & Nav. Co.* 10 Or. 250 ; *Knahtla* v. *Oregon S. L. Ry. Co.* 21 Or. 136 (27 Pac. 91).   From the fact that an appliance broke once before when used by a different person under different circumstances no presumption of its being defective could legally arise.

(2) A servant has the right to assume that the master will furnish, and has furnished, reasonably safe and suitable appliances, but if the servant ascertains, or has reasonable opportunity to ascertain, that he has not done so, but has furnished unsafe and defective appliances, and thereafter continues to use them without a promise on the master's part for betterments, he does so at his own peril : *Duntley* v. *Inman,* 42 Or. 334 (59 L. R. A. 785, 70 Pac. 531); Burrows, Negligence, § 45 ; *Brown* v. *Oregon Lum. Co.* 24

Or. 317 (33 Pac. 557); *Stager* v. *Troy Laundry Co.* 38 Or. 480 (53 L. R. A. 459, 63 Pac. 645); *Stone* v. *Oregon City Mfg. Co.* 4 Or. 52; *McGlyn* v. *Brodie,* 31 Cal. 376; *Johnson* v. *Oregon S. L. Ry. Co.* 23 Or. 9 (31 Pac. 283); *Hurst* v. *Burnside,* 12 Or. 520 (8 Pac. 888).

(3) A master may conduct his business in a manner most agreeable to himself, using either old or new appliances; and an employé who has knowledge of the character of the appliances furnished him by the master, and is injured in their use, cannot recover: *Duntley* v. *Inman,* 42 Or. 334 (59 L. R. A. 785, 70 Pac. 529–531); *Quigley* v. *Levering,* 167 N. Y. 58 (60 N. E. 276); *Brown* v. *Oregon Lum. Co.* 24 Or. 319 (33 Pac. 557); *Stone* v. *Oregon City Mfg. Co.* 4 Or. 52; *Gibson* v. *Oregon S. L. Ry. Co.* 23 Or. 493 (32 Pac. 295).

MR. JUSTICE BEAN, after stating the facts in the foregoing language, delivered the opinion of the court.

The first and third defenses set up in the answer may be eliminated from the discussion, as they are not supported by the testimony. The only questions for our consideration are (1) whether there was any evidence from which the jury could have found that defendant was negligent in using a defective or unsafe rope; and (2) if so, whether the risk incident thereto was assumed by the plaintiff.

The principles of law by which these questions are to be determined are too well established to require anything more than a mere statement. It is the duty of a master to exercise reasonable care to furnish his servant with a reasonably safe place in which to work, and reasonably safe appliances and instrumentalities to work with, and to keep them in that condition. For a failure in either of these respects he is liable to an injured servant who is himself free from negligence, unless the defects are known

to or plainly observable by him: *Miller* v. *Inman*, 40 Or.
161, 165 (66 Pac. 713). In an action by a servant against
his master to recover damages for an injury, the burden
of proof is on the plaintiff to show the negligence charged,
and the mere happening of the accident is ordinarily not
sufficient: *Duntley* v. *Inman*, 42 Or. 334 (70 Pac. 529). But
it is not necessary that there should be positive proof of
negligence. It, like any other fact, may be inferred from
the circumstances. There may be, and are, cases in which
the master's negligence is clearly inferable, although there
is no positive proof thereof. The rule is that if two infer-
ences may be legitimately drawn from the facts in evidence,
one favorable and the other unfavorable to the defendant,
a question is presented which calls for the opinion of the
jury. If, however, there is no proof of any fact by which
the defendant's conduct may be ascertained, there is noth-
ing for the jury. The mere proof of an accident, therefore,
ordinarily raises no presumption of negligence; but, where
it is accompanied by proof of facts and circumstances from
which an inference of negligence may or may not be drawn,
the case cannot be determined by the court as a matter of
law, but must be submitted to the jury.

1. Now in this case certain facts, independent of mere
proof of the accident, stand out clearly from the testimony.
The defendant was personally directing the work, and had
actual knowledge of the size and condition of the rope in
use, or was chargeable therewith. The same rope had
been used by him in lowering all the other braces, and had
therefore been subjected to a heavy strain. In lowering
each brace, a turn of the rope was taken around the cap,
and the brace lowered by slacking it up. It was thus
necessarily subjected to more or less friction each time a
brace was lowered, by coming in contact with the sharp
edges of the cap. As a consequence, it was manifestly not
in as good condition at the time of the accident as at the

beginning of the work. The rope broke in ordinary use, and without being subjected to any unusual or extraordinary strain. In addition to all this, there was evidence tending to show that it was an old rope, and that it broke the day before when in use. All these circumstances tended to show that the rope was imperfect and unsuitable for the purposes to which it was applied, and we do not think it can be said, as a matter of law, that under such circumstances there is no question for the jury. In the Duntley Case, which seems to be relied upon by defendant, the injury was caused by the sudden breaking of an iron pulley. The testimony did not show any apparent cause for the breaking. The pulley had been purchased from and set up by a reputable manufacturer. It had been in constant and successful use for some time, and was admittedly suitable and proper for the use to which it was put. There was therefore nothing from which the negligence of the defendant could have been inferred, except the mere fact of the accident, and this the court held was insufficient. But here the sufficiency of the rope which broke is challenged. It was shown that the defendant had used it in a manner necessarily calculated to weaken and destroy its efficiency, that it had broken the day before, and that it was an old rope. Thus there was proof tending to show that the rope was defective and insufficient, aside from the mere happening of the accident, and the distinction between this and the Duntley Case is clear.

2. It is argued, however, that, even if the rope was defective and inadequate for the work, the plaintiff assumed the increased risk caused thereby by continuing in the defendant's service. The rule is well established that where an employé receives and uses a defective appliance he cannot recover for an injury resulting therefrom, if, with knowledge of the defect, he continues in its use without notice to his employer. There is no evidence in this case,

however, that the plaintiff knew the rope was defective or worn. He did not use it to any extent. He had not examined or noticed it particularly, nor was it his place to do so. It was the duty of the defendant to furnish reasonably safe appliances for the use of his servants, and the plaintiff had a right to assume that this duty had been discharged: *Johnston* v. *Oregon S. L. Ry. Co.* 23 Or. 94, 104 (31 Pac. 283); *Texas & Pac. Ry.* v. *Archibald,* 170 U. S. 665 (18 Sup. Ct. 777). Nor does his knowledge of the breaking of the rope the day before the accident alter the situation. He was not using it at the time, and did not know that the break was the result of a defect therein. Indeed, from what the defendant said at the time, and from his conduct, the plaintiff had a right to suppose that the breaking was caused by the carelessness of the man who was handling the rope. Moreover, he had a right to assume, even if the break had been caused by a defect, that the defendant had since substituted a suitable rope in its place. We do not think, therefore, under the testimony as it stands, that there was any ground for holding that the plaintiff assumed the increased risk caused by the use of a defective rope, if it was in fact defective. From these views it follows that the court was in error in sustaining the motion for a nonsuit, and the judgment must be reversed and the cause remanded for a new trial.　　　　　REVERSED.

Decided 11 January, 1904.