Argued October 13, affirmed November 9, 1915.

# ADAMS v. CORVALLIS & E. R. CO.*

(152 Pac. 504.)

**Master and Servant—Actions for Injuries—Questions for Jury.**

1.  In an employee's action for injuries sustained while reducing a carload of lumber and claimed to have been caused by the method in which the foreman directed that the work should be done, evidence *held* to make the question for the jury as to whether the method of performing the work adopted by the employer was different from the usual one pursued by it.

[As to duty of master to servant, see note in 75 Am. St. Rep. 591.]

**Master and Servant—Liability for Injuries—Contributory Negligence.**

2.  Where employees were not permitted to perform their work in their own way, nor according to the usual method adopted by the employer, but were directed by the foreman, who represented the employer and whose orders it was their duty to obey, to follow a different method, the employer was in no position to assert that the injury sustained by one of such employees by reason of the method of doing the work was occasioned by his fault.

**Master and Servant—Actions for Injuries—Questions for Jury.**

3.  Where an employer's foreman told employees who were reducing a carload of lumber that the method followed by them was too slow, and that one of them should get inside the car and shove out pieces of lumber until a sufficient amount had been removed, when the other was to signal him to stop, and then pick up and pile the lumber, and there was evidence that the employees had difficulty in hearing and understanding each other's signals, it was a question for the jury whether the method adopted by the employer was a reasonably safe one, and whether the work was carried on so as to expose the employee picking up the lumber to risks and dangers which might have been guarded against and avoided by the exercise of due care.

**Master and Servant—Liability for Injuries—Methods of Work.**

4.  In the absence of specific statutory requirements, a railroad company discharges its full duty to its employees in adopting and using standard railroad methods, rules or systems.

**Master and Servant—Liability for Injuries—Care Required.**

5.  An employer is not an insurer, but is liable for consequences not of danger, but of negligence, and the unbending test of negligence in methods, machinery and appliances is the ordinary usage of

---

*The question of whether a servant relying upon orders is guilty of contributory negligence is discussed in note in 17 L. R. A. 604.

Direct command to employee as making assumption of risk and contributory negligence questions of fact only is the subject of a note in 30 L. R. A. (N. S.) 442.

On master's liability for injuries received in obeying direct command, see note in 48 L. R. A. 753.                    REPORTER.

the business; the standard of due care being the conduct of the ordinarily prudent man.

### Negligence—Questions for Jury.

6. While mere proof of an accident ordinarily raises no presumption of negligence, yet, where it is accompanied by proof of facts and circumstances from which an inference of negligence may or may not be drawn, the case must be submitted to the jury.

> [As to *res ipsa loquitur* doctrine as applicable to relation of master and servant, see note in Ann. Cas. 1914D, 386.]

### Master and Servant—Actions for Injuries—Burden of Proof.

7. An employee suing for injuries claimed to have been due to an unusual method of work which he was directed by the foreman to follow was bound to show, not only that the method adopted and pursued was unusual, but that it was more dangerous in itself than the ordinary one.

### Appeal and Error—Review—Questions of Fact.

8. Under Article VII, Section 3, of the Constitution providing that no fact tried by a jury shall be otherwise re-examined in any court unless the court can affirmatively say there is no evidence to support the verdict, where the jury has decided a question of fact on conflicting testimony, the Supreme Court is neither required nor permitted to exercise its judgment in order to determine which assertion of the parties is true.

### Evidence—Expert Testimony—Questions for Jury.

9. In an employee's action for injuries sustained while assisting in removing lumber from a car, and claimed to have been due to the dangerous method of doing the work adopted by the employer, the question as to the manner of removing the lumber from the car was one of common experience and knowledge which the court was warranted in submitting to the jury, and was not one upon which the testimony of experts was required to aid the jury in passing upon the question at issue.

### Master and Servant—Actions for Injuries—Questions for Jury.

10. According to the testimony for plaintiff in an employee's action for injuries sustained while reducing a carload of lumber, F. was handing lumber to plaintiff, when the foreman stated that that was too slow a method of removing the lumber; that F. should get inside the car and shove out pieces of lumber; that plaintiff should stand aside and keep tally as the pieces fell, and, when a sufficient amount had been removed, signal F. to stop, and, upon receiving his answer, pick the lumber up and pile it. Plaintiff and F. protested against this method, but complied with the order. After a number of sticks had been thrown out plaintiff called F. to stop, but F., being uncertain whether he heard a call, answered back twice, and, receiving no reply, threw out another piece, striking plaintiff, who had started to pile up the lumber. Plaintiff testified that he heard F. answer, but could not say what he said. *Held*, that plaintiff was not negligent as a matter of law, as the evidence showed that it was not easy for the men to hear each other's signals, and it was necessary for plaintiff

to accept F.'s response to his signal or cause the very delay which the foreman's order was designed to obviate.

[As to reasonableness of rule promulgated by master for guidance of servant as question of law or fact, see note in **Ann. Cas.** **1913C, 187.**]

### Master and Servant—Actions for Injuries—Burden of Proof.

11. A servant who disobeys the orders of his superior takes upon himself the burden of showing the lawful reason for such disobedience.

### Master and Servant—Liability for Injuries—Contributory Negligence —Disobedience of Orders.

12. A servant is not guilty of contributory negligence in obeying the orders of his master, unless the risk is so great that a person of reasonable prudence under the same circumstances would have refused to obey.

### Master and Servant—Actions for Injuries—Instructions.

13. In an employee's action for injuries sustained while assisting in reducing a carload of lumber and claimed to have been caused by the unusual and dangerous method of doing the work adopted by the employer's foreman, the instructions *held* to have fairly submitted the question to the jury.

### Master and Servant—Liability for Injuries—Assumption of Risk.

14. Independent of the statute, a servant assumes the ordinary risks and dangers incident to his employment.

### Master and Servant—Actions for Injuries—Presumptions—Assumption of Risk.

15. Where the jury finds an employer negligent, assumption of risk is not presumed.

### Master and Servant—Liability for Injuries—Assumption of Risk.

16. An employee did not assume risks occasioned by the negligence of his employer.

### Master and Servant—Liability for Injuries—Assumption of Risk.

17. An employee did not assume the risk of injury in obeying the orders of his foreman, unless a person of ordinary prudence would not have done so.

### Master and Servant—Liability for Injuries—Contributory Negligence Distinguished from Assumption of Risk.

18. In an employee's action for injuries sustained while assisting in reducing a carload of lumber, it was plaintiff's claim that against the protests of him and F. the foreman directed F. to get in the car, where he could not see plaintiff, and shove out pieces of lumber until signaled by plaintiff to stop, when plaintiff was to pile up the lumber; that he and F. had difficulty in understanding each other's signals, and that he signaled F. to stop, but was injured by another piece thrown out by F. It was defendant's claim that plaintiff carelessly and negligently, without giving F. the signal to stop, and in violation of instructions, commenced picking up the lumber while F. was throwing it out. *Held,* that this dispute was properly tried out as a question of contributory negligence, and not as one of assumption of risk.

From Linn: PERCY R. KELLY, Judge.

Department 2.    Statement by MR. JUSTICE BEAN.

This is an action by George O. Adams against the Corvallis & Eastern Railroad Company, for damages for personal injuries claimed to have been received by plaintiff while in the employ of the defendant company. The cause was tried before a jury, resulting in a verdict and judgment in favor of plaintiff in the sum of $4,000, from which judgment defendant appeals.

On April 25, 1913, plaintiff and one Clyde Freeman were employed by the Corvallis & Eastern Railroad Company in its car-shops at Albany, Linn County, Oregon. On that date they were directed by George Hoflich, the outside foreman, to reduce a carload of lumber then standing in the car-shops by removing a sufficient quantity of lumber to bring the load within the proper carrying capacity. They undertook to remove the lumber from the car in the following manner:

"Freeman standing at the edge of the door of the car would slide out a stick of lumber, and as the same approached the ground it would be received by Adams and by him placed in a pile on the ground."

The car was an ordinary furniture car, and was loaded with lumber to within about 10 inches of the top and some 10 or 12 feet from the ground. Plaintiff claims, and the evidence tended to show, that after a number of pieces of lumber had been removed George Hoflich, the outside foreman of the defendant company, ordered the work to proceed in a different manner, to wit, Freeman was to get inside the car and shove out pieces of lumber. Adams was to stand by,

apart from the lumber, and keep tally as they fell.
When a sufficient amount had been removed, he was
to give a signal to Freeman to stop, and upon receiv-
ing his answer Adams was to pick up the lumber and
pile it.   This change was made in order to increase
the speed.   Plaintiff and Freeman protested against
the proposed method, but the foreman insisted, where-
upon they complied with his order.   After a number
of sticks had been thrown out plaintiff called Freeman,
who, uncertain whether he had heard the call, answered
back twice, and, receiving no reply, threw out another
piece.   On hearing Freeman call, in response to him
and pursuant to the given orders, Adams went forward
to remove the lumber, and was struck by the piece
thrown out by Freeman.   Plaintiff claims that the de-
fendant was negligent in the following particulars:

(1) In keeping in its employ as outside foreman,
George Hoflich, because he was incompetent and in-
experienced; (2) that the method of work directed by
him was dangerous and unsafe; and (3) "that defend-
ant, through its agent and servant, the said George
Hoflich, ordered plaintiff and the said Clyde Freeman
to perform their work by an unsafe method, against
their objections, and notwithstanding a safe method,
as hereinbefore described, was practicable, as defend-
ant well knew."

The main charge of negligence is as follows:

"That while the plaintiff and the said Clyde Free-
man were engaged in reducing the said car of lumber
in a safe manner, to wit, by the said Clyde Freeman,
within the car, passing out to the plaintiff one piece
of lumber at a time, the defendant then and there,
through its agent and servant, the said outside fore-
man, George Hoflich, negligently ordered the plaintiff
and the said Clyde Freeman to proceed with the work
in another manner, to wit, by the said Clyde Freeman
throwing out a number of pieces in succession until

the plaintiff should give a signal, whereupon the said Freeman was to pause until the plaintiff should have removed the accumulated pile of lumber; that the said Clyde Freeman was so situated in the car that it was impossible for him to see the plaintiff, or for plaintiff to see the said Clyde Freeman, and it was difficult, and at times impossible, for the said Clyde Freeman and the plaintiff to receive or understand the signals given by each other; that the method of work so ordered by the outside foreman was for these reasons unsafe; that plaintiff and the said Clyde Freeman protested against the performance in the manner so ordered, but that defendant, through the said outside foreman, negligently insisted on the performance in said unsafe manner, whereupon the said Clyde Freeman and plaintiff proceeded to perform the work in the manner so ordered.

"That while plaintiff and the said Clyde Freeman were engaged, pursuant to the order of the said George Hoflich, in doing the work in the manner so ordered, and while plaintiff was removing a pile of lumber which had been thrown out by the said Clyde Freeman, the said Clyde Freeman, owing to the misunderstanding of a signal given by plaintiff, and owing to failure to receive a signal given by plaintiff, threw out a piece of lumber, which struck plaintiff upon the head, rendering him unconscious and severely wounding him."

In its answer defendant denied any negligence on its part, and as a first affirmative defense averred, in substance:

"That on said April 25, 1913, plaintiff, together with two other workmen employed by this defendant, was engaged in reducing a carload of lumber, and that said work was performed in the following manner: One of said employees, named Freeman, was inside the car shoving out sticks of lumber from said car, and the plaintiff was upon the ground, and when a sufficient number of sticks of lumber had been so shoved from the car by said Freeman, it became and was the duty of the plaintiff to straighten said lumber and arrange

the same in a pile; that while said Freeman was shoving lumber out from said car it was impossible for him to see the plaintiff and to know the plaintiff's whereabouts, and that it became and was the duty of the plaintiff to keep himself free and clear of any sticks of lumber which the said Freeman should shove out of said car, all of which plaintiff fully knew, appreciated and understood; that while engaged in said work said Freeman pushed one of said sticks of lumber out of said car, and the same fell crosswise, and the said plaintiff thereupon recklessly and carelessly, and without giving any signal whatever to Freeman, and without taking any care whatever for his own safety to protect himself from being struck by any other piece of lumber which said Freeman might shove from said car, stepped directly in front of the opening through which said Freeman was shoving lumber, and the said Freeman, not knowing that plaintiff had thus placed himself in a position of danger, shoved another stick of lumber from said car, and the same struck plaintiff, causing whatever injury plaintiff suffered at said time; and that said accident was caused by the carelessness and negligence of the plaintiff as above set forth, and was not caused or contributed to in any way by any negligence on the part of this defendant or any of its employees.''

As a second affirmative defense defendant detailed the manner of reducing the carload of lumber, and alleged that in performing the work Freeman and plaintiff were fellow-servants, and that the act by which plaintiff was injured was that of a fellow-servant. As a third affirmative defense, after a recital of the transaction practically the same as in the first defense, defendant alleged assumption of risk. The reply put in issue the affirmative matter of the answer. Upon the trial, before the introduction of any evidence, counsel for defendant requested plaintiff to elect whether he would proceed under the common law or

under the Employers' Liability Act. His counsel consented to proceed under the rules of the former.

As a witness in his own behalf, after stating that at the time of the accident he was at work under the direction of George Hoflich, outside foreman, the plaintiff testified in part thus:

"We were working shorthanded. Previous to that we always had at least three men. One man stood inside of the car and pushed—handed the lumber out. Mr. Freeman pushed the lumber out to me. I took it away as he was handing it to me, piled it on a pile, and put the dimensions on a car. * *

"Q. How long did you continue to do the work in that manner? * *

"A. Just a short time; yes, sir. * * Mr. Hoflich * * came around and told us we were working too slow; * * that Freeman should get inside and shove the lumber out, get back in behind the lumber in the back of the car, where he could get to the end of it, and shove it out, and shove the lumber out, and when he got a portion of the lumber out, or when I was to signal, and he was to stop while I carried it away, and while it was falling out of the car I should take the dimensions of the lumber, and when I told him to stop he was to stop while I carried it away from the car and piled it. * * I told him that I didn't feel as though I would like to stand underneath the car while a man was inside shoving it, that he couldn't see me or I couldn't see him, and Freeman objected because he didn't like to be up in the car shoving it out, not being able to see me. * * He [Hoflich] said that we had to do it his method; he had to get the car out in a hurry."

After stating that they followed the foreman's directions, plaintiff continues:

"He [Freeman] was lying on his stomach in the car. There was just about of, I should judge, possibly hardly a foot space between the top of the lumber and the roof of the car. * * I stood back, oh, possibly

about 6 foot from the door, back toward the end of the car, and Freeman, who was inside of the car at the end of the lumber, he must possibly have been in there at least 8 or 10 foot at the least, from that to 12 or 16 feet from the door of the car, behind the lumber, shoving it out. * * He shoved out a considerable number of pieces of lumber, and I checked them as they fell. * * When I thought that we had nearly enough lumber out to make the required number that we had to reduce, I called to him to wait a minute, and he answered * * something twice; I couldn't say what; * * and when he answered I immediately proceeded for to pick up the lumber and pile it to one side, * * and I went to pick up a piece of lumber, another one came; well, when I went to pick up a piece lumber, that is as far as I can go. I don't remember being struck at all.''

In regard to the usual method adopted by defendant in reducing carloads of lumber plaintiff testified:

"Q. And during that time you would throw out the material, and one would check it off, the number of pieces, and keep account of it?

"A. One would check it off, one would pass it out, and the other would take it away; that was the usual method. I was usually checking. * * No; very seldom piled it [the lumber]. I usually did the checking We always worked before with three men. We were shorthanded that time. They had laid men off, and Mr. Taylor said we had to do it again.''

George Hoflich, witness for defendant, testified in part that cars of lumber were often overloaded; that that morning he, Mr. Adams and Mr. Freeman went down to reduce the load of lumber, and they removed a few 2x8 and 2x12 timber from the top, and then came to some 2x4's, and, as they were light, he said to Freeman, "Just shove them out and let them fall on the ground, and after you get a certain amount out, why, we will stop and pile them up''; that he said to Mr.

Adams, "Stay back and let Mr. Freeman shove them out; let them hit the ground." He testified that he then went to another car and proceeded to remove some 2x3 lumber; that after he had thrown out 10 or 12 pieces, when about 50 feet away from Adams, just as he struck the ground, he heard someone say:

" 'Oh!' I looked around and seen Mr. Adams hold his hand up to his head. I immediately went to him, and says to him, I says, 'What is the matter with you, Adams?' 'Why,' he says, 'I thought,' he says, 'there was one stick fell on crosswise,' he says, 'I thought I would straighten it out; but,' he says, 'I got hit on the head,' he says. 'I will be all right in a little bit.' I says to Mr. Freeman, I says—I called him Clyde—I says, 'Clyde, stop,' I says, 'come out; Adams is hurt'; and he immediately came out of the car."

Hoflich said that he spoke to Freeman in an ordinary voice; that Freeman threw out one stick after Adams cried out. Evidence on the part of defendant tended to show that the usual method of performing the work, if the material was heavy, was to take several men to remove it, and, if light, for one man to throw it out, and that Adams usually kept check on the lumber.

AFFIRMED.

For appellant there was a brief over the name of *Messrs. Weatherford & Weatherford,* with an oral argument by *Mr. M. V. Weatherford.*

For respondent there was a brief and an oral argument by *Mr. Elmer Richardson.*

MR. JUSTICE BEAN delivered the opinion of the court.

1-3. The principal questions for consideration were raised by the timely interposition by defendant's counsel of a motion for a nonsuit and one for a directed

verdict in its favor. It is charged on the part of the
company that the evidence in the case is insufficient
to be submitted to the jury or to support the verdict.
A point of contention is that there is no proof in the
record that the method of performing the work adopted
by defendant was not the usual one pursued by it.
From the testimony of the plaintiff above referred to
we are unable to accede to this. It is clearly shown
by his evidence that the usual manner of performing
the kind of work in which he was engaged at the time
of the injury was different from that directed by the
order of the foreman, while the testimony of Hoflich
and other witnesses for defendant tend to contradict
the plaintiff. The defendant is not in a position to
assert that it was plaintiff's fault that occasioned the
injury, for the reason that the evidence tended to show,
and the jury found, that Adams and his co-worker,
Freeman, were not permitted to perform the task in
their own way nor according to the usual method
adopted by the company. In the execution of the un-
dertaking the defendant was represented by Mr. Hof-
lich. It was the duty of these workmen to obey his
orders. When the foreman informed Adams and Free-
man that the mode of reducing the carload of lumber
then pursued by them was too slow, and directed them
to perform the work in a particular way, which dif-
fered from the customary manner, all of which was
detailed to the jury, it then became a question for that
tribunal to determine from all the facts and circum-
stances shown by the evidence whether the process
adopted by the defendant was a reasonably safe one,
or whether the work in which the company was en-
gaged was carried on so as to expose its servant
Adams to risks and dangers which might have been

guarded against and avoided by the exercise of due care: *Galvin* v. *Brown & McCabe,* 53 Or. 598 (101 Pac. 671); *Brown* v. *Oregon Lumber Co.,* 24 Or. 317 (33 Pac. 557). The jury by their verdict found the latter condition prevailed, and that it was the proximate cause of the injury.

4, 5. In the absence of specific statutory requirements, a railroad company discharges its full duty to its employees in adopting and using the standard railroad methods, rules or system: *Jackson* v. *Wheeling R. R. Co.,* 65 W. Va. 415 (64 S. E. 450). In the performance of work similar to that in which the plaintiff was employed at the time of the accident, in the conduct thereof the duty of the master is the same as devolves upon him to select competent servants or to supply them with suitable devices or appliances to do the work allotted to them. The standard of due care is the conduct of the ordinarily prudent man: *Brown* v. *Oregon Lumber Co.,* 24 Or. 317 (33 Pac. 557); *Titus* v. *Bradford,* 136 Pa. 618 (20 Atl. 518, 20 Am. St. Rep. 944); *Johnson* v. *Portland Stone Co.,* 40 Or. 440 (67 Pac. 1013, 68 Pac. 425). Employers are not insurers. They are liable for consequences, not of danger, but of negligence, and the unbending test of negligence in methods, machinery and appliances is the ordinary usage of the business: *Coin* v. *J. H. T. Lounge Co.,* 222 Mo. 488 (121 S. W. 1, 17 Ann. Cas. 888, 25 L. R. A. (N. S.) 1190).

6, 7. While mere proof of an accident ordinarily raises no presumption of negligence, yet, where it is accompanied by proof of facts and circumstances from which an inference of negligence may or may not be drawn, the case must be submitted to the jury: *Geldard* v. *Marshall,* 43 Or. 438, 444 (73 Pac. 330); *Galvin* v. *Brown & McCabe,* 53 Or. 598 (101 Pac. 671). It was incumbent upon the plaintiff to show, not only that

the method adopted and pursued by defendant in reducing the car of lumber was unusual, but also that it was more dangerous in itself than the ordinary one: *Cunningham* v. *Fort Pitt Bridge Wks.*, 197 Pa. 625 (47 Atl. 846).

8. The pivotal question in the case at bar is a disputed one of fact, which, from conflicting testimony, the jury have decided in favor of plaintiff. We are not required nor permitted to exercise our judgment in order to say which·assertion of the parties is true. This was the special province of the jury. Article VII, Section 3, of the Constitution provides in part that:

"No fact tried by a jury shall be otherwise re-examined in any court of this state, unless the court can affirmatively say there is no evidence to support the verdict."

It was for the jury to determine from the evidence under the law whether the method put in operation by defendant was a reasonably safe one. The jury evidently believed that the plan adopted necessitated that Freeman be ensconced behind the load of lumber on the inside of the car, making a kind of breastwork over which he was compelled to throw the lumber, and that Adams' position on the outside, where he was required to speedily remove the timber, with no flag of truce, and only a signal by verbal communication, which was likely to be misunderstood, was unnecessarily rendered a dangerous place in which to work.

9. The question relating to the manner of removing lumber from a car was one of common experience and knowledge, and the court was warranted in submitting it to the jury. It was not a matter upon which the testimony of experts was required to aid the jury in passing upon the question at issue. Our employers'

78 Or.—9

liability law (Laws 1911, p. 16) enjoins upon an employer in work involving a risk or danger to employees the duty of using every device, care and precaution which it is practicable to use for the protection and safety of life and limb. While we are of the impression that the present case is governed by, and should have been tried under, that law, it was not invoked by plaintiff upon the trial. This, however, was favorable to the defendant.

10–12. As to the defense of contributory negligence, it could not be said, as a matter of law, that the plaintiff was negligent. The method of work was changed to promote the speed. Plaintiff was directed to check the dimensions of pieces of lumber as they fell, and, after signaling Freeman to stop and receiving his response, to proceed with the removal of the ° sticks already thrown out. He followed this direction. Had he delayed until Freeman had crawled forward to the door of the car, he would have violated his orders and defeated the purpose of expediting the preparation of the car. Plaintiff was not legally in fault for following the directions of the foreman. His direct evidence and the difficulty experienced by Freeman in determining what plaintiff said at the time of the accident tended to show that it was not easy for the men to hear the signals in the positions in which they were placed by the command of Hoflich. It was necessary for plaintiff to accept the signal given by Freeman or cause the very delay which the foreman's plan of operation was designed to obviate. Under these circumstances, the jury might reasonably find that the plaintiff was not at fault nor guilty of contributory negligence. It is true that the evidence of Hoflich and the other witnesses for defendant tended to show that Freeman could hear a person distinctly on the inside

of the car, but this controversy was within the province
of the jury.   A servant who disobeys the orders of his
superior takes upon himself the burden of showing
the lawful reason for such disobedience.   Respect for
those in the master's authority, as well as a consider-
ation for his own interests, may very properly induce
one to waive his own judgment for that of his superior.
No doubt, this was the reason why Adams adhered
to the orders of Hoflich and refrained from entering
into a dispute and creating discord, and perhaps sub-
jecting himself to a dismissal.   The company is not
in a position to claim that Adams erred in carrying
out the plan mapped out by this foreman: *Chicago &
N. W. R. Co.* v. *Bayfield,* 37 Mich. 205, 210.   A servant
is not guilty of contributory negligence in obeying the
orders of his master, unless the risk is so great that
a person of reasonable prudence under the same cir-
cumstances would have refused to obey: *Pressed Steel
Car Co.* v. *Herath,* 207 Ill. 576, 580 (69 N. E. 959); *Chi-
cago & N. W. Ry. Co.* v. *Bayfield,* 37 Mich. 205, 210;
*Butler Ballast Co.* v. *Hoshaw,* 94 Ill. App. 68.

13. The court instructed the jury in part:

"If you find from a preponderance of the evidence
that the plaintiff and his coemployee, Clyde Freeman,
were working under the orders and directions of the
outside foreman, George Hoflich, and were required
to obey the orders and directions of such outside fore-
man, then the outside foreman was a vice-principal of
the defendant, and if you find that he was negligent
in failing to perform the duties which the law imposes
on the defendant, as stated in these instructions, if
he did so fail, then his negligence, if any, was the neg-
ligence of the defendant."

By instruction 28 the court further charged the jury:

"If you find from a preponderance of the evidence
that defendant was negligent, under the rules laid down

in these instructions, in failing to exercise reasonable care that the method or rule prescribed for plaintiff to work should be reasonably safe * * or in ordering plaintiff and his coemployees to quit a safe method of work * * for an unsafe method, * * then the mere fact * * that plaintiff followed the rule or method prescribed, or obeyed the order given, is not negligence, unless you find that a reasonably prudent and careful person would not, under similar circumstances, have followed such method or rule or obeyed such orders."

We think the instructions fairly submitted the question to the jury.

14-18. As to assumption of risk under the rules prevailing independent of our statute a servant assumes the ordinary risks and dangers incident to his employment. The jury having found the defendant negligent, assumption of risk is not presumed. Plaintiff did not assume risks occasioned by the negligence of the defendant: *Oberlin* v. *Oregon-W. R. & N. Co.*, 71 Or. 177 (142 Pac. 554, 557); *Olsen* v. *Silverton Lumber Co.*, 67 Or. 167, 176 (135 Pac. 752); *Vanyi* v. *Portland Flouring Mills Co.*, 63 Or. 520, 530 (128 Pac. 830); *Manning* v. *Portland Shipbuilding Co.*, 52 Or. 101, 103 (96 Pac. 545). Adams did not assume the risk of injury in obeying the orders of Foreman Hoflich unless a person of ordinary prudence would not have done so; *Millen* v. *Pacific Bridge Co.*, 51 Or. 538, 555 (95 Pac. 196); *Illinois Steel Co.* v. *Ryska*, 200 Ill. 280, 285 (65 N. E. 734). The allegations of defendant as to assumption of risk are practically a repetition of those relating to contributory negligence. The defendant does not allege that the duties of plaintiff required him to place himself opposite the car door and pick up lumber while Freeman was throwing it out, but, on the contrary, that Adams carelessly and negligently did so without

giving Freeman any signal to stop, and, as the evidence of defendant purports to claim, in violation of instructions. This was a matter of dispute which was properly tried out as alleged contributory negligence, and should not be classified under assumption of risk: *Oberlin* v. *Oregon-W. R. & N. Co.,* 71 Or. 177 (142 Pac. 557). There is no allegation that plaintiff's fellow-servant, Freeman, was negligent, and there is practically no proof whatever that any wrongful act of his caused the injury to Adams. There was evidence sufficient to be submitted to the jury and to support the verdict; therefore there was no error of the trial court in denying the motion for a nonsuit and in refusing to direct a verdict in favor of defendant.

As stated in the brief of counsel for defendant, the instructions excepted to involve the same questions and are governed by the same principles of law as those raised by the motions, to which reference has been made, and they do not require separate discussion. Suffice it to say a careful examination of the charge to the jury leads us to believe that the case was fairly and plainly submitted to them. As to additional questions, the same may be said of defendant's motion for a new trial as presented to us in its brief.

Finding no error in the record, the judgment of the lower court is affirmed.                    AFFIRMED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE EAKIN and MR. JUSTICE HARRIS concur.